Roosevelt and others *vs.* Carow and others.

What constitutes a valid delivery of a deed.

Where a deed from a father, to trustees, in trust for his daughter, was signed and sealed by the grantor in the presence of witnesses, but the attesting clause did not state that it was *delivered;* and the grantor retained the same in his possession nearly four years after its execution, and until the time of his death, without disclosing its existence either to the trustees or to his daughter, the cestui que trust; in the mean time treating the property as his own, and altering his will so as to increase a previous devise to his daughter to an amount nearly double the value of the property conveyed; and after his death the deed

Roosevelt *v.* Carow.

was found in a bureau belonging to the grantor, among his clothes, and was then proved by one of the subscribing witnesses, and recorded; *Held* that such deed was void and inoperative as a deed of bargain and sale, for want of a valid delivery.

*Held also*, that such deed was not valid or operative as a voluntary settlement.

A voluntary settlement, fairly made, is always binding in equity, on the grantor, unless there be clear and decisive proof that he never parted, nor intended to part, with the possession of the deed. And even if he retains it, the weight of authority is in favor of its validity, unless there be circumstances besides the mere fact of his retaining it, to show that it was not intended to be absolute. *Per* EDMONDS, J.

In EQUITY. This was an appeal, by the plaintiffs, from a decree of the Hon. A. L. ROBERTSON, late assistant vice chancellor of the first circuit. James I. Roosevelt, being a man of large estate in the city of New-York, and having one daughter, married to the defendant Michael Burke, on the 30th of April, 1833, bought a house and lot in that city, in the vicinity of his own residence, taking the title to himself. He also repaired and furnished it, and permitted his daughter to occupy it as tenant at will, under him. After occupying it a few months she abandoned it. Afterwards, and on the 9th of January, 1834, Roosevelt (the father) executed a letter of license which recited that he was the owner of the house and furniture which had cost him $10,987, and that he was desirous of providing a suitable residence for his daughter, free from the control or debts of her husband, and declared that in consideration of the premises he granted and allowed her to enter upon and occupy the house and furniture during his pleasure, but not to extend beyond his life or hers; and it was provided that nothing therein contained should divest the father of the possession of the house and furniture, and that the interest on the above sum, and the deterioration of the house and furniture, and all future advances for her, should be charged to her as a debt, and be deducted from her portion of his estate after his decease. This instrument, formally sealed and executed, was approved by the daughter and delivered to her. By virtue of it she, on the day of its date, again went into the occupation of the house, and (with an intermission of a year, during which she and her husband took board,) contin-

Roosevelt *v.* Carow.

ued to occupy it until her death on the 12th of Feb. 1844. At the time of purchasing the house in 1833, Roosevelt had made his will, in which he devised to his daughter $40,000. On the 11th of February, 1837, he made another will revoking former ones, in which he devised to his daughter $60,000. He died in August, 1840. After his death, a paper was found by one of his distant relatives, among his clothes, in the drawer of a bureau in which he was not in the habit of keeping his papers, which was in the following words:

· " In consideration of one dollar to me in hand paid, I do hereby assign and convey in trust to Cornelius V. S. Roosevelt, James I. Roosevelt junior, Peter Augustus Jay, and Isaac Carow, my house and lot of ground with the furniture therein, known as house No. 116 in Greenwich-street, next door to the corner of Carlisle-street in the city of New-York, containing about twenty-three feet front and rear and about fifty-four feet deep, to have and to hold the same for the use and support of my daughter Catharine Angelica and also her children, with full power to them my said trustees, or a majority of them, to sell and convey the same and convert the proceeds into such other funds as they may deem most advisable for the purposes aforesaid. In witness whereof I have hereunto set my hand and seal this second day of November, 1836.

Signed and sealed in presence of us,

R. G. Palmer, Lewis McMullen.

JAMES I. ROOSEVELT." [L. S.]

(The following was attached to it after the grantor's death:)

" City and county of New-York, ss.: On this 28th day of September, 1840, before me personally appeared R. G. Palmer, satisfactorily proved to me to be the subscribing witness to the foregoing instrument by the oath of William H. Roosevelt, who being duly sworn says that he knows him to be such person, and that he resides in the city of New-York; and the said R. G. Palmer being duly sworn, says that he is acquainted with James I. Roosevelt, knows him to be the same individual described in and who executed the foregoing instrument—that he saw him execute the same, and that he acknowledged

Roosevelt v. Carow.

that he executed the same for the uses and purposes therein mentioned; and that he the said witness resides in the city of New-York, and that he is a subscribing witness thereto.

W. R. BEEBE, Comm'r of deeds," &c.

"Recorded in the office of register of the city and county of New-York, in liber 406 of Con's, page 633, September 28, at 40 min. past 1 P. M."

This paper, dropped on the floor from among the clothing of Mr. Roosevelt, as the person above mentioned was removing them from the drawer, was picked up by her and laid upon the mantel-piece, where it remained unnoticed for several days, until a younger brother, Wm. H. Roosevelt, accidentally found it there, took possession of it and delivered it to Mrs. Burke. He took it to a commissioner of deeds and had it proved by one of the subscribing witnesses, and then left it in the register's office to be recorded. Neither of the subscribing witnesses knew the nature of the paper which they had thus attested, nor was the existence of the paper known to any one but the father until it was thus accidentally discovered; except that W. H. Roosevelt had seen it among his father's clothes in the drawer of the bureau about two years before his father's death. The whole of the paper, except the signatures of the witnesses, was in the hand-writing of the grantor; but the fact that it had been executed by him was not disclosed by him to either of the grantees named in it. Three of the grantees were the same persons who were afterwards named by him as executors of his will and trustees for the $60,000 which he had given by his will to his daughter and her children, two of them being his sons and residuary devisees. The daughter left her surviving, her husband and two children. The bill in this cause was filed by the residuary devisees against Michael Burke and his two infant children, and Isaac Carow, to have the paper of November, 1836, given up and cancelled and declared void; the husband and his children continuing to occupy the house and furniture, and claiming to own it under that paper.

On the part of the defendants it was given in evidence that in March, 1840, Mrs. Burke requested her father to purchase a

house in Walker-street for her, instead of that in Greenwich-street, and he declined, saying he wished her to remain in Greenwich-street, as he had bought a house for her there and he did not like to make out any more papers. He wished her to remain there and have the house repaired; and after that he made extensive repairs on it, at a cost of at least $1000. It was also proved that Mr. Roosevelt had frequently said he had bought the house for his daughter and intended it as a permanent residence for her.

The assistant vice chancellor made a decree establishing the deed of the 2d of November, 1836; and declaring that on the death of Mrs. Burke the premises therein mentioned passed to her children, the infant defendants, in equal proportions, and directing a reference to inquire whether it was for the interest of the infants that the same should be sold, &c.

*J. I. Roosevelt,* for the appellants.

*C. O'Conor,* for the respondents.

*By the Court,* Edmonds, J. The first question that arises, in this case, is whether the deed of November, 1836, was so executed and delivered as to have become operative. It is essential to the validity of a deed of land that it be delivered. But what it is that constitutes a delivery is frequently a difficult question to determine. Sometimes a delivery will be presumed from the facts that the deed was proved or acknowledged, and recorded. It was so presumed in *Elsey* v. *Metcalf,* (1 *Denio,* 324.) But in *Stilwell* v. *Hubbard,* (20 *Wend.* 44,) in *Maynard* v. *Maynard,* (10 *Mass. Rep.* 456, *and* 3 *Metc.* 275,) in *Jackson* v. *Phipps,* (12 *John.* 418,) and in *Naldred* v. *Gilham,* (1 *P. Wms.* 577,) it was held otherwise; because there was other evidence of an intention that it should not operate. Sometimes a delivery may be inferred from the grantee's holding possession of the premises granted consistently with the character of the grant; but not when that holding is equally consistent with another and a different grant. (*Jackson* v. *Phipps,* 12 *John.* 418.) Sometimes it may be inferred from the grantee's having

possession of the deed; but not where such possession can not fairly be presumed to be with the assent of the grantor. (*Carver* v. *Jackson*, 4 *Peters*, 22. *Uniacke* v. *Giles*, 2 *Moll.* 257.)

A delivery of a deed, to be valid, is such an act of the grantor touching its execution as deprives him of the power of controlling its operation, and confers on the grantee the right to enforce it, even against the will and pleasure of the grantor. It need not be delivered to the grantee: it may be delivered to a stranger, for his use; (*Doe* v. *Knight*, 5 *B. & C.* 671;) even though the grantee do not know of its existence until after the grantor's death. Nor need it remain in the possession of the stranger or of the grantee. It will be valid, if it remain in the hands of the grantor; provided it be signed, sealed and declared by the grantor, in the presence of the attesting witnesses, to be delivered as his deed, and provided there be nothing to qualify the delivery. (*Souverbeye* v. *Arden*, 1 *John. Ch. Rep.* 240. *Doe* v. *Knight*, 5 *B. & C.* 671.) But the test is, can the grantee at any time and in any way get possession of it? Can he enforce it, even against the will of the grantor? Did the grantor intend that at all events, and immediately, it should operate? And could the grantee have filed a bill to take the instrument into safe custody? (*Stilwell* v. *Hubbard*, 20 *Wend.* 44. *Uniacke* v. *Giles*, 2 *Molloy*, 257.) Was there nothing to qualify the delivery but the grantor's keeping possession? nothing else to show that he did not intend it to operate? (*Scrugham* v. *Wood*, 15 *Wend.* 546. *Souverbeye* v. *Arden*, 1 *John. Ch. R.* 256. *Brinckerhoof* v. *Lawrence*, 2 *Sandf. Ch. R.* 406.)

Recollecting that the deed in question is a conveyance of land, and that seizin, once out of the grantor, can not be revested by a mere destruction of the conveyance, or by any act short of a seizin again, or some solemn act substituted for it, and applying to it these tests, we are irresistibly led to the conclusion that this deed was never delivered.

It was barely signed and sealed by the grantor in the presence of witnesses, and even in that act, he, well acquainted with the forms of conveyancing, was careful to leave out of the attesting clause, the usual words to signify that it was "delivered"

also. From that time till his death, a period of near four years, he retained the instrument in his own possession, never disclosing its existence either to the grantees named in it or to the persons beneficially interested ; and in the mean time he acted toward the property as if it was his own, paying taxes and expending money for repairs, and altered his last will, increasing the devise to his daughter to an amount nearly double the value of the property in question. There is nothing in all this tending in any manner to show that the grantees named in the instrument, or the cestuis que trust, could have obtained possession of it—could have enforced it against his will, or could have filed a bill to have taken it out of his possession ; or to show that it should operate absolutely. The facts which are invoked in aid of a different construction, viz. his refusal to change the house, and his declaration that he had bought it as a permanent residence for his daughter, are just as consistent with the continuance of the license, as with the character of this paper; and there is nothing from which we can justly infer an intention to deliver, except his signing and sealing. And those acts are just as consistent with an intention that it should not operate in case he altered his will, (as he afterwards did,) as with an intention that it should operate absolutely. A court of equity will disregard a deed as an imperfect instrument, if it be voluntary and never parted with, and executed for a special purpose never acted on, and without the knowledge of the grantee. (*Cecil* v. *Butcher*, 2 *Jac. & Walk*, 573.)

This deed was not delivered until after the death of the grantor, and was therefore inoperative. (*Jackson* v. *Leek*, 12 *Wend.* 107.) It was kept possession of by him, and there is nothing to show an intention that it should operate *in presenti ;* and therefore was inoperative. (*Stilwell* v. *Hubbard*, 20 *Wend.* 44.) There was no acceptance by the grantee, which is also essential to a valid delivery. (*Jackson* v. *Phipps*, 12 *John.* 418.) And although an acceptance will be presumed from the beneficial nature of the transaction, where the grant is absolute, yet such presumption is not indulged where the grantee derives no benefit, but is subjected to a duty or the performance of a mere

Roosevelt *v.* Carow.

trust. (*Jackson* v. *Bodle*, 20 *John.* 185.) And there are several circumstances, besides the mere retention of the deed by the grantor, to qualify the delivery. (*Doe* v. *Knight*, 5 *B. & C.* 571.)

Under these circumstances it is impossible for us to hold that this instrument was duly delivered and operative as a deed of bargain and sale.

It remains to inquire whether it may not be operative as a voluntary settlement. It was not a gift *inter vivos ;* for such gifts have no reference to the future, but go into immediate and absolute effect; and there was no delivery, either actual or symbolical, *secundum subjectam materiam.* It was not a gift *causa mortis ;* for it was not conditional, like legacies, was not made in contemplation and expectation of death, and there was no delivery, as before mentioned.

If good at all, it was so as a voluntary settlement, which if perfect, will be executed after the death of the grantor; because, between the executor and donee, there is no preferable equity. But then it must have been so final that the party claiming under it could, during the assignor's life, have filed a bill to take it into safe custody. ⸳ (*Uniacke* v. *Giles, supra.*) The possession of the instrument must have been obtained by the grantee with the assent of the grantor, and not clandestinely. (*Naldred* v. *Gilham*, 1 *P. Wms.* 577.) To allow force to this deed, will be to give the daughter a double portion, which is not encouraged, unless it is clear that such was the intention. (*Johnson* v. *Smith,* 1 *Ves. sen.* 316.) There are acts here, viz. the keeping the deed in his possession, concealing the knowledge of its existence, and increasing the daughter's portion by a will subsequently made—which denote an intention contrary to that appearing on the face of the instrument. (*Bunu* v. *Winthrop*, 1 *John. Ch. R.* 336.)

A voluntary settlement fairly made is always binding, in equity, on the grantor, unless there be clear and decisive proof that he never parted nor intended to part with the possession of the deed; and even if he retains it, the weight of authority is in favor of its validity, unless there be circumstances besides

the mere fact of his retaining it, to show it was not intended to be absolute. (*Souverbeye* v. *Arden*, 1 *John. Ch. Rep.* 256.) *Naldred* v. *Gilham, supra,* was a case of that kind. In *Cotton* v. *King,* (2 *P. Wms.* 358,) the deed of settlement was put into the hands of the grantor's agent with strict charge not to part with it, and no other person was privy to the transaction, and the settlement was held not to be binding. *Clavering* v. *Clavering,* (2 *Vern.* 473;) *Boughton* v. *Boughton,* (1 *Atk.* 625;) *Johnson* v. *Smith,* (1 *Ven. sen.* 314,) and *Brinckerhoof* v. *Lawrence,* (2 *Sandf. Ch. Rep.* 400,) were all cases in which the settlements were held to be good, although the grantor had retained possession of the deed; but they were cases in which there were no circumstances besides such retention to show that the deeds were not intended to be absolute. (5 *Barn. & Cress.* 571.)

Now in this case, there is something besides the retention of the deed, to show the intention of the grantor. The silence which he maintained in regard to it, and which in the case of *Cotton* v. *King* was controlling—his acts towards the property, and his subsequent will—are all circumstances going to show his intention, or at least showing that he had no intention it should at all events be absolute, or be so in any contingency which afterwards happened.

This instrument, then, whether it be regarded as a deed of bargain and sale, or as a voluntary settlement, or in its relation to real or personal estate, has only one element of vitality—it was signed and sealed. It was never delivered; for the delivery after death is nothing. (*Jackson* v. *Leek,* 12 *Wend.* 107.) Nor is there any satisfactory evidence that it was intended to operate at the grantor's death. And it can not be sustained.

The decree of the assistant vice chancellor must be reversed, and the instrument decreed to be delivered up and cancelled.

Decree accordingly.