By the Court. Bosworth, J.
Catharine Westervelt, at the time of her marriage, in August, 1806, to Daniel E. Tylee, was seized in fee of an undivided half of the premises in question, subject to the life estate of her mother therein. Her mother, in June, 1808, conveyed all her interest in the undivided half of the lots to D. E. Tylee. This conferred on him a right to the rents and profits during such life, which expired in May, 1831.
On the 21st of August, 1822, Daniel E. Tylee and wife conveyed the undivided half of these lots by deed to James Tylee. The deed was acknowledged on the day of its date by both of the grantors, and by the wife separately. On the 23rd of the same August, James Tylee reconveyed the same premises to Daniel E. Tylee by a deed of that date, and acknowledged on that day. These deeds were not recorded until the 28th of September, 1843. According to the Begister’s *95 entry, they were left to he recorded by B. S. Brooks, who was then acting for D. E. Tylee, in defending the first entitled suit. That suit was commenced about the 27th of July, 1843, and on that day a subpcena and injunction, in it, were served on D. E. Tylee.
These deeds were not produced on the trial, but were proved by the production of copies duly certified by the Register of this city and county. The deeds were by law entitled to be recorded (1 R. S. 760, §§ 22 & 23,) and a copy of the records was competent evidence of the execution and delivery of the deeds. (Id. 759, § 17.)
The plaintiff insists that there is express proof that the deed to James Tylee was never delivered to him. The testimony of D. E. Tylee shows that it was not formally placed in the hands of James Tylee. It does not appear whether James Tylee was present when the deed to him was executed and acknowledged. The witness was of the impression that the execution of the deed to, and of the deed by him, were simultaneous acts. If each was executed on the day of its date, as must be presumed, inasmuch as each was acknowledged on the day of its date, and before different commissioners, the execution of the one was not simultaneous with that of the other, but a day intervened between the execution of the two.
The deed from James to Daniel E. Tylee, recites the giving of the deed by the latter and his wife to the former, that by it they granted, bargained, and sold to him all their interest and estate in the premises which it purports to have conveyed, and re-conveys them to Daniel É. Tylee, and implies, if not affirms, an assent to, and the acceptance of the deed so recited.
Presumptively, James Tylee must have had in his possession the deed executed to himself, in order to draw the deed which was, on the second day after the date of the first, executed by him.
According to the testimony of the same witness, the object of executing the deed by himself and wife to James Tylee was to have the title to the lots vested in himself, by a reconveyance to himself by James Tylee. That intention was carried into effect by the execution and acceptance of such reconvey *96 anee. After such reconveyance, the deed to James Tylee would properly be in the actual custody of Daniel E. Tylee, as a muniment of his title. Under such circumstances, to hold the deed inoperative on. the mere ground that it was never so delivered as to vest the title in James Tylee, more clear and positive proof that there was no delivery, and that it was so understood at the time, should be given, than is furnished by the testimony before us. (Souverbye v. Arden, 1 J Ch. R. 251-2 ; Scrugham v. Wood, 15 Wend. 545.)
The case before us differs from that of Jackson v. Phipps, 12 J. R. 413, in this, that in the latter the grantee was not informed of the execution of the deed, and of course did not assent to it, in the lifetime of the grantor. In the case before us, the grantee, if not present at its execution and acknowledgment, knew of it, assented to it, and acted on it within two days thereafter.
We do not feel authorized to hold that the deed to James Tylee was not delivered to him when it was executed, and that it was at the time so understood by the parties executing it. They severally acknowledged that they “ executed the same as their respective voluntary act and deed for the uses and purposes therein mentioned,” and the grantee immediately acted upon it as an operative deed.
The presumption that an intended and valid delivery was made, is not sufficiently overcome, to justify us in holding that it was never so delivered as to be valid and effectual between the parties. If the estate was vested in Daniel E. Tylee by the deeds of the 21st and 23d of August, 1822, then the defendants, Chastelain and Turner, have succeeded to it, by the conveyance made to them by D. E. Tylee on the 21st of March, 1846, unless it be true, as the counsel of the plaintiff insists, that D. E. Tylee and those claiming under him, are estopped by the deed of D. E. Tylee and wife to Morris, from denying that, at its date, the title was in Mrs. Tylee, and unless it is also true that the will of Mrs. Tylee in favor of her husband was unauthorized by law, and inoperative and void.
If the estate must be deemed to have been vested in Mrs. Tylee at the date of the deed to Morris, then the title was not subsequently vested in Daniel E. Tylee, unless the will of his *97 wife, executed in 1840, is a due execution of a valid power of appointment.
As a mere will devising lands belonging to her in fee it would be clearly void. (2 R. S. 57, § 1.)
It is deemed to be well settled law, that a married woman cannot convey her real estate directly to her husband. There was in this case no ante-nuptial settlement or agreement, by the terms of which the wife was authorized to make an appointment. At the time the trust deed to Morris was executed she was a. married woman, incapable of disinheriting her heirs by a devise of the lands, or by a conveyance of them directly to her husband. The conveyance to Morris, in trust for D. E. Tylee, in default of an appointment by the wife during her life, was, as to such trust, void. (R. S. Vol. i. 728. § 55 & § 49.)
To allow him to take directly under the trust deed, would contravene the rule, that the husband cannot take directly under a deed from his wife.
No person is capable of granting a power who is not at the same time capable of aliening some interest in the lands to which the power relates. (1 R. S. 732, § 75.)
If a married woman cannot convey directly to her husband, can she, by uniting with her husband in a conveyance to a third person, reserve a valid power to appoint to his use? Gan she by such a proceeding confer upon herself power to do an act which the law declares her incompetent to perform, that is to say, the power to appoint it in favor of her husband.
A power is an authority to do some act in relation to lands, in the creation of estates therein, or of charges thereon, which the owner granting such power might himself lawfully perform. (1 R. S. 732, § 74.) Assuming the fee to have been in Mrs. Tylee, this case is one in which she has reserved the power to transfer the estate directly to her husband. She reserved such power, if her will is a due execution of a power reserved in the trust deed. She could not perform any act, the direct effect of which would be, if legal and valid, to vest the estate in her husband. If she could only reserve the power to do such acts as she might herself lawfully perform, then she could not *98 reserve any power, by virtue of which she could devise directly to her husband.
By 1 R. S. 737, § 129, no estate or interest can be given or .limited to any person, by an instrument in execution of a power which such person would not have been capable of taking, under the instrument by which the power was granted.
I do not understand the prohibition of this section to refer merely to estates void by reason of an illegal suspension of the power of. alienation (§ 128 id.), but to estates which may be lawfully created, but which the appointee of a power is incompetent to take by deed directly from the person creating or reserving the power.
Daniel E. Tylee, the husband, could not have taken a remainder in fee under the trust deed to Morris, even if it had contained proper and apt words to vest such an estate in him on her death, for the reason that the wife cannot convey directly to him. Being incapable in law of taking any estate under the deed creating the power, no estate can be vested in him by any execution of the power.
§ 130 declares that “ when a married woman, entitled to an estate in fee, shall be authorized by a power to dispose of such estate during her marriage, she may, by virtue of such power, create any estate which she might create if unmarried.”
If this section refers to cases in which a feme sole, owning lands in fee, in contemplation of marriage, conveys to a trustee by a deed to which the intended husband is a party, and reserves the power of granting or devising the fee during coverture, its meaning and application are obvious. In such a case, she could make' a valid appointment in favor of her husband, because she could do that if unmarried, and she would only have reserved the power to do an act which she could lawfully have performed at the time of creating the power (§ 74), and the appointee would be a person who could have taken a fee under the instrument creating the power. (2 Sug. on Powers, p. 23, § 4; Parks v. White, 11 Trs. 222; Bradish v. Gibbs, 3 J. Ch. R. 523.)
Unless this is the proper construction of § 130, then it would follow that a woman during coverture, by uniting with her husband in a conveyance of her lands to a trustee, may under *99 the pretence of reserving a power which she did not possess, in fact create a power in her own favor, to convey'the lands by deed directly to her husband. The execution of a valid power may be directed to be made by deed. During coverture she possesses no power to convey by deed as a feme sole, and is destitute of any testamentary capacity. Such power, or capa-; city, cannot be created over lands belonging to herself in fee, by virtue of any agreement made during coverture between herself and her husband. It can only be created by an ante-nuptial agreement between them, at which time she has legal capacity to perform the acts, which by the deed in question she reserved the power to perform, and which she has attempted to perform by making a will in favor of her husband.
It follows that the appointment in favor of the husband is unauthorized by law, and is void, and that he cannot make title under it and the deed creating the power.
Are Chastelain and Turner, who claim title under a deed from Daniel E. Tylee made bn the 21st of March, 1846, es-topped by the deed to Morris, made in October, 1839, from denying that the fee was in Mrs. Tylee, at the date of the deed to Morris ?
The deed to Morris does not recite that Mrs. Tylee then owned the lots in fee, but recites that she inherited them from her father, which is untrue in fact, as her title was by virtue of a devise. -The recital undoubtedly implies that they were her property. It also recites that “ she has heretofore enjoyed the same, and the rents and profits thereof, as if the same were her individual estate,” not, as being her separate estate. The rents and profits from June, 1808, to May, 1831, were not rents and profits to which she had any right, legal or equitable. They belonged to D. E. Tylee,' not by virtue of his marital rights, but as a purchaser from the mother of Mrs. Tylee, who had an estate in the premises during her own life. If Mrs. Tylee enjoyed the rents and profits during that period, it could not have been an enjoyment 'of rents and profits legally, or equitably, her own, hut bnly, as if they had been the rents and profits of lands which belonged exclusively to herself.
These recitals are found in a deed which defeats the obvious intention of the parties to it, and which is inoperative for all *100 purposes except to divest D. E. Tylee of his marital rights. The obvious intention of the parties was, that in the event of the death of Mrs. Tylee without making any appointment, the fee should vest in him, that if she executed the power her appointee should take, and by the manner in which it was executed that he should be such appointee. By allowing the deeds of the 21st and 23rd of August, 1822, to operate, full effect will be given to the intention of the parties as evinced by the trust deed to Morris.
Estoppels by implication are not favored in equity, and should not be allowed to preclude a court from ascertaining the truth, unless there is a strict estoppel at law. In a note contained in the second volume of Smith’s Leading Cases (edition of 1852), all the adjudged cases on the subject of estoppels are collected and reviewed, and the principles deducible from them stated.
Two of the rules deduced, are applicable to the facts of this case, viz.:
First. Ho estoppel can arise by deed or record when the allegation in the deed or record is uncertain. “ Eor an estoppel not being favored by the law, ought to be certain to every intent.” (Co. Litt. 352b, 303a.) And therefore if “ a thing be not directly and precisely alleged it shall be no estoppel.” (Co. Litt. 352.)
Second. That estoppels ought to be mutual, is a rule “ laid down by many of our text writers (see Co. Litt. 352. Cro. Eliz. 31). Thus if a man take a lease of his own lands from a married woman by indenture this works no estoppel on either part, because the married woman not being estopped by reason of her disability, the lessee is not.”
We have seen, it is not directly or expressly alleged in the trust deed to Morris, that the fee was in Mrs. Tylee at the time of its date. The most that can be affirmed is, that the recitals in the deed imply or justify the inference that the fact was so. It not being distinctly alleged that she owned the fee, the defendants are not precluded from showing the truth, and proving that the fee was vested in her husband.
The wife of Daniel E. Tylee was not estopped by the deed, from proving the truth in relation to the title, at the time of its *101 date. If the deed had recited that the lauds belonged to her husband in fee, she would not have been estopped by it from proving that in fact the fee was vested in herself. She not being estopped by it, her husband is not.
We all agree in the conclusions that the deeds of the 21st and 23rd of August, 1822, are valid and effectual, to vest in Daniel E. Tylee title to the property conveyed by them, and that the recitals in the trust deed to Morris” do not estop Chastelain and Turner from proving that fact, and making title under the deeds. These points being sufficient to dispose of the whole case, my brethren do not deem it necessary to express any opinion upon, or even to consider any other points discussed on this appeal.
Duer, J.
While we all agree in the judgment that has been pronounced, and in the reasons that have been given for it, I wish to be understood, as expressly declining to intimate any opinion upon the question, whether a married woman might not, under the provisions of the Revised Statutes, in the article “ Of Powers,” reserve or create to herself, in' a deed executed by her husband and herself to a third person, the power of appointing to his use, or devising to him by her last will, the lands which the deed embraces. It is a question of considerable difficulty, upon which it may hereafter be found that important interests depend, and without rejecting, I am not now prepared to assent to the conclusions at which my brother Bosworth has arrived.
From the construction, however, which my brother has given to § 129, in the article “ Of Powers,” it seems proper that I should now say, that I entirely dissent. As I construe that section, it only means that no person shall take, an estate under a power that, if limited to him by the instrument creating the power, would have involved an undue suspense of the power of alienation; in other words, where its direct limitation would have been void, as too remote. Section 129 merely declares the legal consequence of the rule which § 128 establishes, and is to be construed, precisely as if the word “ hence ” had connected the sections, by following the first, and preceding the second • and both the sections are expressed very nearly in *102 the words in which the rule and its consequence will be found to be stated by the most approved text-writers on this abstruse branch of the law, Eearne, Sugden, and Cruise. As I construe the section, therefore, it refers only to the nature of the estate granted, and not at all to any personal incapacity of the grantee, other than that which the rule, declared in § 128, necessarily creates, although it cannot be denied that the words of the section are quite susceptible of the interpretation that my brother Bosworth' has given to them.
In our opinion there is no error in the judgment appealed from, and it must be affirmed with costs.