## McLean *vs.* Button and others.

Although there must be a delivery to the grantee, or to some one for his use and benefit, to make a perfect conveyance at law, yet where a deed contains stipulations on both sides, and is executed by both parties before subscribing witnesses, and no duplicate is signed, no presumption against its validity arises from its being in the possession of one of the parties.

If the parties to an instrument are present, and the usual formalities of execution take place, and the contract is, to all appearance, consummated, without conditions or qualifications annexed, it may be a complete and valid deed, notwithstanding it be left in the custody of the grantor; especially where the object of the instrument is to make some family settlement, or provision for a child, or other relative; or the party retaining the instrument has an interest in keeping it, inasmuch as it contains covenants in his favor.

A conveyance of personal property, the consideration of which is the future support of the grantor, and his wife and children, is within the section of the revised statutes relative to transfers of personal property in trust for the use of the grantor, (2 *R. S.* 135, § 1,) and is therefore void as against the subsequent creditors of the grantor.

APPEAL from a judgment of the Franklin county court, affirming the judgment of a justice in favor of the plaintiff. The plaintiff, Archibald McLean, sued the defendants for taking and carrying away some cattle. The defendants justified under a judgment for between $30 and $40, in favor of one Stearns, against William McLean, the father of the plaintiff, rendered before a justice in February, 1851, and an execution issued

McLean *v.* Button.

thereon and levied upon the cattle soon after. It was proved that the property, on the 20th of September, 1849, belonged to William McLean, and on that day he and the plaintiff sealed and signed the following instrument : " This contract or lease, entered into by and between William McLean and Mary McLean, on the one part, and Archibald McLean of the other part, witnesseth, that for and in consideration of certain lands and tenements, together with certain goods and chattels, this day sold and delivered to the said Archibald hereinafter mentioned, doth agree to support William McLean and Mary McLean his wife, during their natural lives, both food and raiment in sickness and health, and first, Archibald is to have the farm I now reside upon, in the town of Westville, county of Franklin and state of New York, under its present incumbrance to the land office, to have and to hold forever, together with all the appurtenances thereunto belonging, together with six acres of corn now on the ground, six acres spring rye, one and a half acres of potatoes, one and a half acres of buck wheat, one pair of six years old oxen, two cows, the one six years old and the other four years old, one pair of steers coming two years old, also a pair of steer calves, also six hogs, three old ones, the other pigs, also one cook stove, one box stove, one clock, two beds and bedding, together with all the kitchen furniture of all sorts and sizes, together with one plow, one harrow or drag, one chain, clevises, yoke, bows, staple and rings, &c.; the above named articles to have and to hold forever, provided always, that he, the said Archibald, shall and truly fulfill on his part the hereinafter mentioned conditions, viz : 1st. I, Archibald McLean, do agree with the above named William and Mary, that I will provide for them a good comfortable living, both victualing and clothing, as well as lodging, for and in consideration of the premises and the other articles herein mentioned, the receipt of the same is hereby acknowledged, I do undertake and promise to provide for them in sickness and health during their natural lives. Also, it is further agreed that the said Archibald is to provide for the three minor children, viz : Hazeltine, William and Mary. I am to give them a fair chance at school, as well as food and raiment, until they

are of lawful age, and they are to be under his control, subject to his order, and he to be benefited by their labor and all their earnings ; all of which is to be done, performed and kept, according to the spirit and meaning of this writing.   Hereunto we have set our names and seals, this 20th September, 1849.

WILLIAM McLEAN.     [L. S.]

Witness, John McGrath.        ARCHIBALD McLEAN. [L. S.]

Robert Taylor."

This paper was retained by William McLean ; and it was proved that the plaintiff had no family ; that he was about 23 years of age at the time this contract was made ; and that he and his father and mother, and brothers and sister, lived on the place mentioned therein ; and used the property, and all worked together, as before ; except that there was evidence on the part of the plaintiff, tending to show that the plaintiff appeared to control the property ; and on the other hand, that the father was in possession, and was supposed by his neighbors to be the owner ; and the creditor, who obtained this judgment against him, testified that the father had frequently told him he was the owner of the property.   The father swore that the agreement, or sale, included all his property ; that he was about 53 years old at the time of the trial ; and that there were no judgments against him on the 20th of September, 1849 ; that he did not know as he was in debt to any one then ; and added, that he had "no lawsuit then with any one as I mind ;" and that he signed the paper for the purpose of having his son support him, because he could not support himself.

*A. Hobbs,* for the defendants.

*G. M. Beckwith,* for the plaintiff.

*By the Court;* HAND, P. J.   The defendant raises a preliminary objection, that the instrument, under which the plaintiff claims the property, was not delivered, and therefore not a valid contract, even between the parties.   But it has been said, that if the parties to the instrument are present, and the usual for-

malites of execution take place, and the contract is to all appearance, consummated without conditions or qualifications annexed, it may be a complete and valid deed, notwithstanding it be left in the custody of the grantor. (4 *Kent*, 445.) It would seem that this remark, at least in a certain class of cases, is sustained by authority. (*Doe* v. *Knight*, 5 *Barn. & Cres.* 671. *Souverbye* v. *Arden*, 1 *John. Ch.* 240. *Scrugham* v. *Wood*, 15 *Wend.* 545. *Roosevelt* v. *Carow*, 6 *Barb.* 190. *Doe* v. *Lewis, and Richards* v. *Lewis*, 11 *C. B.* [2 *J. Scott*,] 1035.) In *Doe* v. *Knight*, however, the delivery was to a third person for the mortgagee; and in *Souverbye* v. *Arden*, it was directly to the *cestuis que trust*, and afterwards to the trustees. But the remarks of Bayley, J. in one case, and of Chancellor Kent in the other, seem sufficiently broad to sustain this general principle; especially, where the object of the instrument is to make some family settlement, or provision for a child, or other relative. And the present is a case of that kind; and, besides, the father had an interest in retaining the instrument, as it contained covenants in his favor. (*Scrugham* v. *Wood, supra.*) No doubt there must be a delivery to the grantee, or to some one for his use and benefit, to make a perfect conveyance at law; but where a deed contains stipulations on both sides, and is executed by both parties before subscribing witnesses, and no duplicate is executed, I do not think any presumption against its validity arises from the possession of one of them.

This instrument is inartificially drawn; but I think, if valid, it may be construed as a conveyance of the property of the elder McLean, subject to a condition subsequent. Although there is no proof showing when the claim arose upon which the judgment in favor of Stearns was obtained, and the conveyance was, in fact, of all the property which the father possessed, and he seemed not to be very clear whether he was indebted at the time, still I think we must for the purposes of this suit, assume that he was not indebted on the 20th September, 1849.

The question then is, whether this property was liable to the claims of subsequent creditors. The language of our present statute on this subject, differs from that of 3 *Hen.* 7, *ch.* 4, and

also from that of the act of 1787. (2 *R. S.* 135, § 1. 1 *R. L.* 75, § 1. *Rev. Notes*, 3 *R. S.* 656, 2d ed. 13 *Vin.* 517.) By 3 *H.* 7, *ch.* 4, all deeds of gift of goods and chattels, made in trust to the use of the grantor, to defraud creditors, were void. The first section of the act for the prevention of frauds, passed February 26th, 1787, (1 *R. L.* 75,) enacts " that all deeds of gift and conveyances of goods or chattels, made or to be made in trust, to the use of the person or persons making the same deed of gift or conveyance, shall be, and hereby are declared to be, void and of none effect." In terms, this has no reference to creditors. And this may be the reason that so little reference to it has been made by the courts of this state. But our present statute upon this subject is more full. " All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, made in trust, for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person." (2 *R. S.* 135, § 1.) The statute of 3 *Hen.* 7, *ch.* 4, extended only to goods and chattels ; and its effect seems to have been almost superseded by the statute of 13 *Elizabeth, ch.* 5. But the section, as it now stands, not only makes gifts and conveyances, and all transfers or assignments of goods and chattels, and choses in action, in trust for the use of the donor and grantor &c., void as to existing, but also as to subsequent creditors. There has been some conflict of opinion as to the validity of a voluntary conveyance, and of those made upon a good consideration merely, as against subsequent creditors. (1 *Stor. Eq. Jur.* §§ 361, 2, *and cases there cited.* 11 *Wheat.* 199. 8 *id.* 229.) But here a conveyance of personal property, in trust for the use of the party making it, is declared to be void as to the creditors he has then or may have afterwards ; and without reference to the consideration. (*And see Leitch* v. *Hollister*, 4 *Comst.* 211 ; *Barney* v. *Griffin*, 2 *id.* 365 ; *Goodrich* v. *Downs*, 6 *Hill*, 438 ; *Mackie* v. *Cairns*, 5 *Cowen*, 547 ; *Fiedler* v. *Day*, 2 *Sandf. R.* 594.) If the transfer, in this case, was of that nature, the plaintiff must fail, although the consideration in part should be deemed valuable. And I am inclined to think this con-

tract may receive that construction, within the cases last ci-ted; especially, when taken in connection with the continued possession and use of the property by the father and his fami-ly. It is true, the agreement does not, in express terms, say the property shall be held in trust for him. But in consequence of the transfer, or agreement to transfer, the plaintiff agreed to support his father and mother, &c. The consideration of the transfer, if the title passed at all, was the future support of the grantor or donor and his wife and children; and in case of fail-ure, the father could have reclaimed the property, at least, as between him and the plaintiff. In addition to this, the want of a change of possession made it fraudulent, as against the cred-itors of the father. (2 *R. S.* 136, § 5. *Id.* 137, § 1.) If the case turned solely upon this last point, it might have been a question of fact, which had been disposed of by the courts be-low; but, taken in connection with the trust, I think all the circumstances bring the case within the first section of the re-vised statutes which we have cited above; and, if so, it became a question of law.

The judgments of the county court and of the justice should be reversed.

Judgment reversed.

[CLINTON GENERAL TERM, July 3, 1854. *Hand, Cady* and *C. L. Allen,* Justices.]