## LORETTA E. McCULLOUGH v. HIRAM DAY, ESTHER DAY AND WILLIAM DAY.

*Bill in aid of execution—Non-leviable property.*

A bill in aid of execution cannot be so drawn as to reach property that is not leviable if filed while the execution is still in force and before it is returned.

Where a bill in aid of execution is sustained as to part of the property it is filed to reach, but is dismissed as to the rest, and only the defendant appeals, it is understood that complainant's claim to the latter description is not pressed.

Complainant in a bill in aid of execution filed to set aside a conveyance which defendant is alleged to have delivered after verdict had been

rendered against him, has the burden of proving that delivery was not made until after verdict.

In deciding whether a deed was delivered at its date or at some other time the material inquiry is when did the minds of the parties meet in regarding it as unconditionally belonging to the grantee.

Where a deed was ready for delivery at its date and delivery was practicable and there is positive evidence that it was delivered, evidence to the contrary, consisting of verbal admissions and the testimony of prejudiced parties, cannot, in a proceeding in equity, be regarded as convincing.

On appeals in equity the Court inquires into the facts and forms its own conclusions.

Appeal from Washtenaw. Submitted January 25. Decided April 13.

BILL in aid of execution. Defendant appeals. Reversed and bill dismissed.

*Albert Crane* for complainant.

*Joslin & Whitman* for defendants.

GRAVES, J. On the 24th of January, 1879, the complainant obtained a verdict against defendant in the sum of $1000 in a suit for libel. He procured an order staying proceedings thirty days, but after the termination of the stay and on March 25th judgment was entered on the verdict. It appears that in 1840 he became grantee of a farm of sixty two and a half acres in the township of Ypsilanti and in 1865 the grantee of a house and lot in the city of Ypsilanti; and that both pieces of property stood as his on the records of the register of deeds until the 18th of February, 1879. On that day, however, and whilst the stay of proceedings was running, two quit-claim deeds from him to his wife, the defendant Esther, being one for each parcel, were placed on record. The deed of the city lot was dated March 7, 1871, was witnessed by Thomas Ninde and Chauncy P. Worden and acknowledged before Judge Ninde the next day, March 8, 1871. The deed of the farm was dated March 28, 1873, was witnessed by James Arnold and by Mr. Babbitt, now one of

complainant's counsel, and was acknowledged before the latter gentleman on the same day. March 4, 1879, Mrs. Day conveyed the whole property to their son, the defendant William Day, who on the 22d mortgaged the same with other lands to Daniel Forbes for $3000. May 5, 1879, complainant sued out an execution on her judgment returnable the first Tuesday of August, and on the day of its issue the sheriff levied on the house and lot and the sixty-two and a half acres, and filed the usual notice in the office of the register of deeds. On the 3d of July, 1879, and whilst the execution was still running, complainant brought this bill to assist it.

We notice that it contains some matters which are only appropriate where the object is to reach classes of property that are not liable to seizure on execution, but there was no foundation of course for anything of that kind. The execution being still out and active at the time the suit was commenced, no necessity was legally apparent for seeking through equity to discover and subject to the judgment any non-leviable interests. *Smith v. Thompson* Walk. Ch. 1; *Williams v. Hubbard* id. 28; *Tyler v. Peatt* 30 Mich. 63.

The bill charged that no delivery of the deeds to Mrs. Day was made prior to the verdict; and that they and also her deed to William were entirely devoid of consideration, and were in fact given and received with the intent to prevent collection of the verdict. The defendants answered and fully denied these allegations, and both parties proceeded to adduce testimony at great length. The circuit judge came to the conclusion that in respect to the farm the case was made out, but not so in regard to the city lot, and he decreed accordingly. The complainant acquiesced, but the defendants took an appeal to this court.

It thus appears that the city lot is not a subject of discussion in this Court, and that the controversy is only whether the two deeds given for the farm ought to be put out of the way of complainant's execution, and the only essential issue on this inquiry is a very narrow one. It was naturally a part of complainant's case to contend that there was no delivery

of the deed from defendant Hiram until her right had attached to question its good faith, and she accordingly charged that delivery was withheld until after the verdict, and it is needless to go further than this question. It was an obvious consequence of the position of complainant that she had the burden of proof and was bound to support her allegations by satisfactory evidence. *Darling v. Hurst* 39 Mich. 765. And the record shows with what diligence and ability the learned counsel labored to satisfy the requirement.

There is little scope for investigation, and a minute discussion of the testimony would not be profitable. A careful examination of the record with the aid received from counsel has led us to a result which we consider indubitable. On the part of the defense we have positive statements that delivery was actually made in 1873, and also other statements by way of corroboration. The case in evidence for complainant contains statements of declarations and admissions of the different defendants made at various times and under various circumstances tending to negative the idea that the deed was considered as having taken full effect, and besides these items there are incidents tending to create belief that the elder Day and wife did not regard the title as having passed at any time prior to the verdict. But when this testimony is sifted, and full allowance is made for the elements of fallibility in that part of it relied upon to prove admissions and declarations made casually in conversation in former years, we are quite unable to regard it as having much value on the point at issue. 1 Greenl. Ev. § 200 ; *Pawling v. United States* 4 Cranch 219.

Some portion of defendant's testimony is exposed to the same consideration. Moreover, the most material oral evidence on that side is not derived from impartial sources. It comes from parties or persons closely related, and in view of the history and surroundings of the case this fact must necessarily have influence. On the whole we repose our chief confidence in the natural and legal import and significance of certain incontestable facts. That the deed was in truth exe-

cuted and acknowledged on the 28th of March, 1873, and that the grántor immediately carried it to his residence where the grantee was, cannot be questioned. That it was in readiness for delivery, and that delivery was entirely practicable, is certain, and it is equally certain that a delivery actually took place either at that time or at some other on or before the 18th of February, 1879, and the further fact must be admitted that no occurrence is proved to have taken place at any time near the date of the deed to frustrate or hinder delivery. Now in all cases of this class, whatever physical disposition of the instrument may have been made, the fundamental inquiry is whether the minds of the parties were agreed in regarding the deed as presently the deed of the grantee, and without any condition or reserve. And as this is a suit in equity the court must conduct this inquiry, and make the proper deductions from the circumstances, and the opinion formed is that the facts just noticed are sufficient to authorize the inference that the union of minds required to effectuate delivery really occurred on the 28th of March, 1873. The following authorities explain the subject, and support the view taken: *Doe v. Knight* 5 B. & C. 671 ; *Clavering v. Clavering* 2 Vern. 473 ; *Exton v. Scott* 6 Sim. 31 ; *Fletcher v. Fletcher* 4 Hare 67 ; *Brown v. Brown* 1 W. & M. 325 ; *Scrugham v. Wood* 15 Wend. 545; *Brinckerhoff v. Lawrence* 2 Sandf. Ch. 400 406 ; *Dempsey v. Tylee* 3 Duer 73 95, 96 ; *Roosevelt v. Carow* 6 Barb. 190 ; *McLean v. Button* 19 Barb. 450 ; *Moore v. Hazelton* 9 Allen 102.

Having thus found on the facts mentioned a case of *prima facie* delivery long prior to the verdict, it remains to observe that the complainant has not succeeded, by virtue of the other evidence *pro* and *con*, in making out a case entitled to weigh against it. No doubt the question on the delivery of the deed of the house and lot is a plainer one, and so far as the result is concerned, was correctly disposed of. This reference is made to that part of the case because the parties seem to have taken it for granted that the determination against the complainant, though not appealed from, was yet open and a subject for discussion.

Several topics noticed by counsel are not material, and call for no remarks.

It follows from what has been said, that the decree must be reversed, and the bill be dismissed, and that defendants will be entitled to the costs of both courts.

The other Justices concurred.