JOHN G. TARBELL, WILLIAM DONNAN, AND SIMON J. MURPHY v. MATTHEW MILLARD AND LEANDER MILLARD.

*Fraudulent conveyances—Bill in aid of execution.*

1. On a review of the testimony in this case (see opinion), the Court held the mortgage alleged to be fraudulent to have been made upon good consideration, and, failing to find proof of its payment, reversed the decree below setting aside said mortgage as fraudulent, and dismissed complainants' bill.

2. Where judgment creditors who had levied an execution upon real estate filed a bill in aid of such execution, averring the fraudulent character of a mortgage given by the execution debtor to his father on said land, and also attacked certain transfers of personal property made by the son to his father as fraudulent, but failed to show that any execution lien had been acquired thereon,—

*Held,* that the right to file said bill to remove said mortgage was unquestioned, but beyond this they could not go, under the bill filed, until execution was returned unsatisfied.

Appeal from Ionia. (Smith, J.) Argued July 7 and 8, 1886. Decided October 21, 1886.

Bill in aid of execution. Defendants appeal. Decree reversed and bill dismissed. The facts are stated in the opinion.

*Lemuel Clute,* for complainants.

*Webster & Millard* (*Isaac Marston,* of counsel), for defendants.

SHERWOOD, J. Previous to September 1, 1882, Matthew Millard had been engaged in mercantile and other business at Palo, Michigan, about thirteen years. He was then the owner of real estate and personal property; had been obliged to hire money to carry on his business, and procure securities on his paper when he obtained his loans. His father, Leander Millard, and an uncle by the name of Baltis Titsworth, usually signed for him when he hired money.

In September, 1882, he was owing several parties, among whom were the complainants, to whom he owed at that time the sum of $384.46, and to recover which the complainants, on the first day of September aforesaid, commenced suit by attaching several parcels of real estate belonging to Matthew Millard, and which was appraised at the sum of $8,650.

On the sixteenth day of November following, judgment for complainants was rendered in the Ionia circuit court for the amount claimed. Execution was subsequently issued, and levied upon the lands attached.

On the twenty-eighth day of August, 1882, and three days before the commencement of the complainants' attachment suit, Matthew Millard gave to his father a mortgage covering the attached property, purporting to be given to secure the payment of $7,700, according to the terms of a certain bond, bearing even date, given to secure the payment of the same amount.

The bill in this case was filed on the fourth day of August, 1883, in aid of the execution levied upon the mortgaged

property, alleging that the mortgage is fraudulent as against the complainants, and praying that it may be so decreed, and set aside as to complainants' judgment and levy thereunder.

The cause was heard on pleadings and proofs before Judge Smith, in the Ionia circuit, and a decree made in accordance with the prayer of the complainants' bill. From this decree the defendants appeal to this Court.

The bill of complaint alleges certain transfers of personal property to the father, as well as the making of the mortgage to him, which are claimed to be fraudulent; but, inasmuch as there is nothing appearing in the bill showing that the complainants have obtained a lien upon such property, or that the execution has been returned unsatisfied, we cannot consider that subject any further than it may have some bearing upon the circumstances under which the mortgage now complained of was given.

It appears that, about the time the defendant Matthew Millard gave the mortgage in question, he was arrested for the crime of murder. He was tried and convicted, and sentenced to prison, where he remained about two years, when a new trial was granted him by this Court, and upon which he was subsequently cleared of the charge. *People v. Millard,* 53 Mich. 63.

It was during this period that Leander Millard had largely to do with the financial affairs of Matthew, and very many of the circumstances narrated in the testimony occurred.

We think the bill states a case for equitable relief. *Cuyler v. Moreland,* 6 Paige, 273; *McCullough v. Day,* 45 Mich. 554; *Reey v. Burnham,* 55 Id. 39.

Do the facts proved support the averments contained in the bill, is the real question. It was not very material whether a bond had been made to accompany the mortgage or not. The mortgage itself contained an express covenant to pay the amount of money and interest purporting to be secured by the mortgage.

That Matthew owned the real estate, and made the mortgage thereon, and that the same was duly recorded before the complainants' attachment was levied thereon, are conceded facts in the case.

The record also shows Matthew's liability to Leander Millard for money loaned to and upon notes given by Matthew, and for indorsements made by Leander for him, exceeding the sum of $14,000, and all unpaid at the time the attachment lien was obtained. These facts are shown by the parties to the indebtedness and indorsements, and by the notes and indorsements for a large portion of it.

It does not appear that Leander, up to the time of the execution of the mortgage in question, had ever had any security for the loans he had made to Matthew, or for the indorsements he had given.

At the time the mortgage was made, if the indebtedness of Matthew was *bona fide* to his father, there was nothing unnatural or unreasonable that he should, under the circumstances, secure his father. This he did, and it is this mortgage that the circuit judge holds is fraudulent as against the other creditors, or, at least, as against the claim of complainants. It will therefore be discovered that the main question in the case is, did Matthew, at the time of the execution of the mortgage, owe his father the money for which the mortgage was given, or was the father liable for the payment of Matthew's indebtedness to the amount thereof as indorser for Matthew? In either event it was the right of Matthew to secure his father by giving the mortgage he did. The question can only be solved by a careful consideration of all the testimony bearing upon the subject. The circuit judge, after such examination and consideration, came to the conclusion that there was fraud in the transaction, and declared the mortgage void as against the claim of complainants; and it is only when we feel very clear that a mistaken view of the case has led to the conclusion reached by the circuit judge,

under such circumstances, that it becomes our duty to interfere.

We shall not attempt any extended discussion of the testimony in the case, but will briefly state the reasons for the decision we think should be made upon the facts as they come before us.

The whole case, upon both sides, rests upon the statements made and notes given by Matthew and his father, and the persons holding the indebtedness against them. The statements of all these parties are to the effect that the loans were made and the liability incurred by Leander in good faith, and that with the same intent and motive was the mortgage complained of made and executed to Leander. Added to this is the evidence of the notes introduced in evidence.

On the other side are the statements claimed to have been made by Leander and Matthew to other persons, as follows:

Witness Holbrook says, after Matthew's arrest Leander told him Matthew was not in debt, did not owe a dollar, and that he, Leander, had not signed for him.

Witness Dodson says, shortly after Matthew was convicted and sent to prison Leander told him that he had not signed any, and was not obliged to pay any, for Matthew; that he was going to use the money to get Matthew out of jail, save some for the children, make himself whole, and, if any was left, Seymour should have it; that he had it all in his own hands now, and could do as he had a mind to.

Mrs. Dodson says she heard Leander say he did not intend to pay any debts he did not have to pay, and he intended the money for the children, and to make himself good.

Fred Orth had a talk with Leander in the summer of 1882 concerning Matthew's business; said it was not true that Matthew had a bank note of $3,000 go to protest; that Matthew had ample means to pay his indebtedness as fast as it became due.

Witness Fowler said, between February 25, 1882, and

March 15, Leander told him that "Matthew is all right if they will let him alone; he has money enough to back him."

Michael Dodson testified that in May, 1883, Leander told him he did not propose to pay any of Matthew's debts that he could get rid of.

The foregoing is the substance of all the talk by Leander to other parties than those directly interested in the result of this suit tending in any way to affect the consideration for said mortgage, or tending to show fraud upon the part of Leander. He, however, denies the conversation with Harmon Dodson, and says whatever talk he had with witnesses Holbrook and Orth occurred in 1881, instead of 1882. He also denies he made the statement testified to by Michael Dodson, and states that he told Dodson he wanted the cash to pay for finishing other wagons.

The defendants filed separate answers, and in each it is averred that, at the time Matthew gave his father the mortgage in question, Matthew owed him over $4,000 for money borrowed, and Leander was then upon Matthew's paper, either as maker or indorser, to the amount of over $10,500, all of which was then unpaid; and, as to the notes and indorsements, they all appear in the evidence as exhibits in the case. Besides this, the father and son were both sworn, and testified to the existence of the indebtedness, and actually produced the notes and obligations for which the mortgage was given, and show that they were then outstanding in the hands of the holders; one being the First National Bank of Ionia, the other Baltis Titsworth.

Other circumstances appear in the case which might be here narrated, which I think also have a tendency to establish the fact that not only a good but a full consideration was given for the mortgage of $7,700, and I am not able to discover any reason why it was not given and taken in good faith.

All persons having experience in the courts know that

statements of conversations occurring at casual meetings of parties upon subjects of no particular personal interest to those who are called upon to narrate them are seldom given with much accuracy, and should be received with great caution. Statements are frequently made in such interviews without consideration, and in such manner as to convey erroneous impressions, and they should never be allowed to control as against circumstances and evidence about which there can be no mistake. Upon a careful examination of all the testimony, I have come to the conclusion that the mortgage was made upon good consideration, and have failed to discover that it has ever been paid.

There can be no question of the right of complainants to file a bill in aid of their execution to remove any cloud upon the property levied on, but beyond this they could not go, under the bill filed, until execution was returned unsatisfied. On the present record, then, all the testimony outside of that relating to the mortgage, in the view I take of the case, was inadmissible.

The only legitimate inquiry was whether the mortgage to Leander was valid, and I think the complainants' proofs fail to impeach it, and it is not shown to be paid. The collections of partnership claims could not affect this individual mortgage, and, under the facts stated, the defendants alone could have a general accounting.

Under these views, the decree at the circuit should be reversed, and the complainants' bill dismissed, with costs of both courts.

CAMPBELL, C. J., and CHAMPLIN, J., concurred. MORSE, J., did not sit.