THE CHICAGO CITY RAILWAY COMPANY

*v.*

WILLIAM TAYLOR.

*Opinion filed November 1, 1897—Rehearing denied December 21, 1897.*

1. APPEALS AND ERRORS—*when not error for court to refuse instruction directing a verdict.* An instruction directing a verdict may be refused where other instructions have been given for the same party which submit the case to the jury for their consideration.

2. SAME—*Appellate Court's affirmance is final upon facts.* In suits at law the judgment of the Appellate Court affirming that of the trial court conclusively settles all controverted questions of fact.

3. TRIAL—*court must refuse peremptory instruction when evidence tends to prove the plaintiff's case.* In actions for negligence an instruction directing a verdict for the defendant is properly refused when there is evidence tending to show due care on the part of the plaintiff and negligence by the defendant.

4. SPECIAL INTERROGATORIES—*when special interrogatories are properly refused.* Where one of the controlling questions in a case is whether the plaintiff was exercising due care for his safety, which question is fairly submitted to the jury by a special interrogatory, other interrogatories as to whether particular acts of the plaintiff show the exercise of due care may be refused.

5. PRACTICE—*Supreme Court may refuse to consider questions raised in reply brief.* The Supreme Court may refuse to consider questions raised by the appellant for the first time in his reply brief.

6. DAMAGES—*extent to which "mental suffering" is an element of damage.* Mental suffering, attending or arising from the injury received, is regarded as part of the injury, for which compensation may be allowed by the jury; but injured feelings which might arise in the mind, not part of the pain naturally attending the injury, cannot be regarded as an element of damage.

7. PLEADING—*general damages need not be specially alleged.* Such mental suffering as is properly an element of damage is of the character termed "general damages," being those which necessarily flow from a personal injury, and may be shown under the general allegations of the declaration.

*Chicago City Railway Co.* v. *Taylor,* 68 Ill. App. 613, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

170—4

This was an action in the circuit court of Cook county brought by William Taylor, against the Chicago City Railway Company, to recover for a personal injury. At the time of the accident, September 1, 1892, appellant was operating a cable street car line on State street, in the south division of the city of Chicago, which line crossed the intersection of State street with Adams street in that city. The West Chicago Street Railroad Company at that time operated a street horse car line on Adams street, which line crossed and intersected the tracks of appellant on State street. Appellee was a driver on one of the cars of the West Chicago company, and while driving his car across State street, towards the west, it was struck by one of appellant's north-bound cable cars.

The declaration charges, in substance; that defendant carelessly and negligently drove and managed its cable car; that it failed to give any signal or warning of its approach to the crossing; that it was driven at an undue, dangerous and excessive rate of speed; that it negligently failed to stop or slacken the speed of the grip car, but drove the same at a high, undue, excessive and dangerous rate of speed upon and against the horse car, etc. To the declaration the defendant pleaded the general issue, and on a trial before a jury the plaintiff obtained a verdict and judgment for $15,000. The appellant appealed to the Appellate Court, where the judgment was affirmed.

W. J. Hynes, and H. H. Martin, for appellant.

Frederick St. John, and Benjamin F. Richolson, (A. W. Browne, of counsel,) for appellee.

Mr. Justice Craig delivered the opinion of the court:

In appellant's argument filed in this court it is first contended that the evidence utterly failed to establish appellee's case, and it was therefore error to refuse appellant's seventeenth instruction, which was as follows:

"The jury are instructed that the evidence in this case would not justify a verdict for the plaintiff, and your verdict must be for the defendant."

The defendant did not, upon the close of plaintiff's evidence nor at the close of all the evidence, move to have the case taken from the jury, nor did it ask to have the jury peremptorily instructed to return a verdict for it, but, on the other hand, the defendant requested the court to give, and the court did give, sixteen instructions, which assumed that the questions of fact necessary to make out a case in favor of plaintiff were properly before the jury. Where instructions have been given at the request of a party which assume the existence of facts necessary to make out a case in favor of the opposite party, it is not error for the court to refuse an instruction like the one here involved. A similar question arose in *Peirce* v. *Walters*, 164 Ill. 560, and it was there said (p. 565): "In other words, defendants submitted the case to the jury for their determination upon the facts, thereby conceding that there was a question for their decision.    The refusal of the instruction, when asked upon the final submission of the case, was proper, because it sought to take away from the jury all questions of fact, and require them to determine, as a matter of law, that there was no evidence before them tending to support the plaintiff's cause of action.    If the defendants desired the court to pass upon the legal question as to whether or not there was any testimony before the jury tending to prove the plaintiff's case, and to bring that question before this court for review as a question of law, they should have asked to have the case withdrawn from the jury before the final submission."

But even if the question attempted to be raised had been properly presented by appellant the ground urged for a reversal of the judgment could not be sustained. If no evidence whatever had been introduced tending to prove that plaintiff was in the exercise of ordinary care,

or if there was no evidence of negligence on the part of
the defendant, it might, and doubtless would, have been
the duty of the court, on application, to direct the jury
to find for the defendant. But such was not the case.
We shall not stop here to review the evidence. It is
sufficient, however, to say there was evidence tending to
prove ordinary care on behalf of plaintiff and evidence
tending to prove negligence on the part of the defendant,
and such being the case, it was the duty of the court to
leave it to the jury to determine the weight of the evi-
dence and return a verdict accordingly. That has been
done, and the plaintiff recovered a judgment in the cir-
cuit court. Whether that judgment was supported by
the evidence was a question which the appellant might
properly contest in the Appellate Court, but when appel-
lant was defeated there and the judgment was affirmed
in the Appellate Court, all controversy over the facts
was ended, the judgment of that court being founded on
the facts.

Appellant has filed here a long brief and argument,
in which the facts involved in the case have been elabo-
rately discussed; but we shall not follow appellant in the
discussion, as that question is not here for our determi-
nation.

It is next contended on behalf of appellant that the
trial judge erred in refusing to propound to the jury the
second, third, fourth, fifth, sixth and seventh special in-
terrogatories asked by defendant. They were as follows:

"*Second*—Could the plaintiff, after entering upon the
north-bound track on the occasion in question, have es-
caped the collision with the grip-car by the exercise of
reasonable and ordinary care on his part in the driving
of his team and the management of his car?"

The third was like the second, except that the word
"avoided" was used instead of the word "escaped,"before
the words "the collision."

"*Fourth*—Ought the plaintiff, on the occasion in question, in the exercise of reasonable and ordinary care under the facts and circumstances appearing in evidence, to have allowed the grip-train to pass by before entering upon the north-bound track?

"*Fifth*—Ought the plaintiff, on the occasion in question, in the exercise of reasonable and ordinary care under the facts and circumstances appearing in evidence, after entering the north-bound track to have hastened his car?

"*Sixth*—Was the plaintiff guilty of a want of ordinary and reasonable care in entering upon the north-bound track ahead of the cable train, under the facts and circumstances appearing in evidence?

"*Seventh*—Was the plaintiff guilty of a want of reasonable and ordinary care, on the occasion in question, in not driving faster than he did after entering upon the north-bound track, under the facts and circumstances appearing in evidence?"

While the court refused the foregoing interrogatories the following was given:

"*Eighth*—Could the plaintiff, Taylor, by the exercise of reasonable and ordinary care and watchfulness on his part, have avoided the collision in question?"

The Appellate Court held that all of the refused interrogatories were embodied in No. 8, which was given, and we are inclined to the opinion that the court was correct. It is manifest that the real, important and controlling question in the case was whether the plaintiff, in driving the horse car across the track of appellant, exercised ordinary care to avoid the collision which resulted in his injury.   If that question was fairly submitted in interrogatory No. 8 there was no necessity for propounding other questions to the jury which might have a near or remote bearing on the question.   Had the jury found, in answer to interrogatory No. 8, that Taylor, by the exer-

cise of reasonable and ordinary care, could have avoided the collision, and so returned in the verdict, that would have been an end of the case. So, also, a finding that Taylor, by the exercise of reasonable and ordinary care, could not have avoided the collision, would seem to be conclusive on the question of plaintiff's negligence. So far, then, as the question of negligence of the plaintiff or the question of the exercise of ordinary care on his part may be involved, the interrogatory propounded covered all that was involved, and while the other interrogatories may have some remote bearing on the question and might have elicited evidentiary facts, we do not think the court erred in refusing them.

A similar question arose in *Chicago and Northwestern Railway Co.* v. *Dunleavy*, 129 Ill. 132. There, as here, the question involved was whether the person injured had exercised ordinary care for his safety. Counsel for the railway company requested the court to submit to the jury the following interrogatory: "What precaution did the deceased take to inform himself of the approach of the train which caused the injury?" The court refused the interrogatory as asked, but modified it to read as follows: "Was the deceased exercising reasonable care for his own safety at the time he was killed?" The ruling of the court on the modification was sustained. It was there said (p. 146): "The ultimate fact which it was incumbent upon the plaintiff to prove, and which the defendant sought to disprove, was, that the deceased, at the time he was killed, was in the exercise of due care. That was one of the issues made by the pleadings, and it was one of the ultimate facts upon which the plaintiff's right to recover necessarily depended. What the deceased did to inform himself of the approach of the train was material only as tending to show reasonable care on his part or the want of it. His acts in that behalf, then, whatever they may have been, were facts which were merely evidential in their nature, and while they doubtless would have had a

tendency to prove reasonable care or the contrary, there were none of them, so far as the evidence shows, which would have been conclusive of that question. The question, then, as submitted by the defendant's counsel, sought to obtain a finding as to mere probative facts, and the court therefore properly refused to require the jury to answer it."

What was said in the case cited applies here. The practice of submitting a large number of interrogatories in a case of this character is more likely to confuse a jury than lead to a correct result, and it ought not to be encouraged.

It is next claimed that the court erred in its ruling on the evidence, and under this head it is claimed the court erred in refusing to allow F. L. Fuller to answer the following question: "Mr. Fuller, has there been a general custom with respect to priority of horse cars and cable cars,—cable trains,—at points where they intersect, during your connection with the West Division Street Railway Company?" The witness had only been connected with the railway company since the accident, and had no knowledge in regard to the existence or non-existence of a custom at the time the accident occurred, and for this reason, no doubt, the court held, and properly so, that his evidence was incompetent. The witness was also asked to state the custom of other roads in St. Paul, but the court held the evidence inadmissible. If defendant relied upon a general custom, proof of such custom should be confined to the time and place of the accident, and evidence of that character was admitted on behalf of the respective parties. So far, therefore, as the ruling of the court on this branch of the evidence is concerned no error was committed.

The court allowed one of appellee's witnesses to testify that the cable cars were run at the usual rate of speed on the morning of the accident, and that the witness did not see anything unusual. Whether the evidence of this

witness was competent or incompetent was of but little importance, as the evidence was not of a character to injure the appellant.

Objection is also made that a witness was allowed to state that he had seen cars stopped in twenty or thirty feet, which were running at the usual rate of speed. We perceive no substantial objection to the evidence. Indeed, after a careful consideration of the record we find no substantial error in the ruling of the court on the admission or exclusion of evidence.

The last ground relied upon to reverse the judgment is, that the court erred in giving plaintiff's fifth instruction. Upon an examination of the record it will be found that this question was not raised and relied upon in the argument in the Appellate Court, nor was the question relied upon in appellant's original brief filed in this court, but, on the other hand, the question was raised and insisted upon in argument for the first time in the reply brief filed in this court. As a justification for not raising the question at an earlier date appellant's counsel, in their reply brief, say: "The rule that this court will not ordinarily consider points which are first made in a reply brief is not an inflexible rule, and will not be applied when those points are (as in the case at bar) preserved in the record and assigned for error, or where good cause exists for not so applying it."

When a question is not raised in the argument by the appellant until he files his reply brief, the court might properly refuse to consider the question, as having been presented too late. But in this case appellee, as it seems, appeared and filed suggestions in reply to the question raised in the reply brief, and as both parties have presented their views in regard to the instruction we have concluded to consider it.

The instruction complained of in substance directed the jury that in determining the amount of damages which the plaintiff is entitled to recover, the jury have the right

to, and should, take into consideration the permanent disability, if any, caused by said injuries, and any future bodily and mental pain or suffering, if any, that the jury may believe, from the evidence, the plaintiff will sustain by reason of injuries received.   The objection to the instruction is, that it authorizes a recovery for future mental pain or suffering.

The question as to a recovery for physical and mental pain is not entirely new in this court.  In *Indianapolis and St. Louis Railroad Co.* v. *Stables*, 62 Ill. 313, an instruction was challenged which informed the jury that they might take into consideration pain and anguish of mind consequent on such injury, but the instruction was sustained. It is there said (p. 320): "It is the mind that either feels or takes cognizance of physical pain, and hence there is mental anguish or suffering inseparable from bodily injury.   *   *   *   The mental anguish which would not be proper to be considered is, where it is not connected with the bodily injury, but was caused by some mental conception not arising from the physical injury."   In *Hannibal and St. Joseph Railroad Co.* v. *Martin*, 111 Ill. 219, the jury were instructed that "in determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury have a right to, and they should, take into consideration all the facts and circumstances in evidence before them, the nature and extent of the plaintiff's physical injuries, if any, testified about by the witnesses in this case, her suffering in body and mind, if any, resulting from such injuries, and also such prospective suffering and loss of health, if any, as the jury may believe, from all the evidence,   *   *   *   she has sustained or will sustain by reason of such injuries."   The court held the instruction correct, and said (p. 232):   "Where suffering in body and mind is the result of injuries caused by negligence, it is proper to take them into consideration in estimating the amount of damages."   See, also, *City of Chicago* v. *McLean*, 133 Ill. 148, where the *Stables case, supra,*

was cited and approved; also *Central Railway Co.* v. *Serfass*, 153 Ill. 379.

In a case of this character we are inclined to the opinion that the rule established by the cases cited is, that any physical and mental suffering attending or arising from the injury received may be regarded as a part of the injury, and, as such, a proper subject of compensation; but injured feelings which might arise in the mind, resulting from the injury, not being a part of the pain naturally attending the injury, cannot be regarded as an element of damage.

Counsel for appellant have cited *Bovee* v. *Town of Danville*, 53 Vt. 183. In that case an action was brought against the town to recover for an injury resulting in a miscarriage of the plaintiff. In the discussion of the question of damages the court said: "The plaintiff was entitled to recover all damages that were naturally and legitimately consequent upon the negligence of the town. If the violence done her person resulted in the miscarriage, that was a legitimate result of such negligence. Any physical or mental suffering attending the miscarriage is a part of it and a proper subject of compensation. * * * Any injured feelings following the miscarriage, and not a part of the pain naturally attending it, are too remote." From the foregoing quotation it seems plain that the rule laid down in the case cited is in harmony with the doctrine declared by this court in the cases *supra*.

Other cases have been cited by appellant, but it will not be necessary to refer to them here, as the question has been substantially settled by the decisions of this court against appellant's view in the cases cited *supra*.

It is also claimed that the instruction was erroneous upon the ground that no allegation or claim as to mental suffering is made in the declaration. This question was settled in *City of Chicago* v. *McLean*, 133 Ill. 148, where it was held that those damages which necessarily result from the injury are termed "general," and may be shown under

the general allegations of the declaration; that only those damages which are not the necessary result of the injury, and which are termed "special," are required to be stated specially in the declaration.

We do not regard the instruction complained of erroneous or calculated to mislead the jury.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*