Argued 22 November, 1898; decided 3 January, 1899.

WHITE *v.* WHITE.

[55 Pac. 645 ; 50 Pac. 801.]

1. DELIVERY OF DEED.—The paramount idea respecting the delivery of a deed is that the control over the instrument shall at once pass to the grantee, but control over the premises is not an element necessary to the vesting of title: *Fain* v. *Smith*, 14 Or. 90, *Hoffmire* v. *Martin*, 29 Or. 240, and *Payne* v. *Hallgarth*, 33 Or. 430, cited.

2. IDEM.—An instruction that if the grantor in his lifetime actually delivered the deed in question to the grantee, with the intention of investing her with the

title, it was sufficient to establish her title, is not susceptible of the construction that if the grantor intended to invest the title at some future time, or at his death, the requirements of a good delivery had been fulfilled, where the context shows that the court had reference to a manual transfer of the deed, and the jury had already been instructed concerning the necessity of a present intention to pass the title.

3. IDEM.—An instruction that if the jury do not find that there was an actual manual delivery of the deed they shall inquire into the circumstances of its execution and as to what the grantor did and said, in order to ascertain his intention in the premises, and that if the grantor, after executing and acknowledging it, either by acts or words, or both, expressed his intention to part with it or surrender its custody, there was a good delivery, is not subject to the criticism that a simple handing of the deed by the grantor to the grantee constituted a good delivery.

4. RECORDING OF DEED—INSTRUCTION.—An instruction that the validity of a deed, the delivery of which was the question to be determined, is not affected by its being left unrecorded, is not subject to the criticism that it withdraws from the jury the fact of the nonrecording as a circumstance in determining the question of delivery, where the jury were given to understand from the whole charge that the nonrecording was a circumstance which they might consider with other facts in the case upon the question whether there was a delivery.

5. RETAINING POSSESSION OF GRANTED LAND.—An instruction that if it were understood between the parties to a deed that the grantor should hold possession during his lifetime it would not prevent the title passing, is not subject to the criticism that it withdraws from the jury the effect of such agreement as bearing upon the question of delivery *vel non*, where it is apparent that its purpose was merely to combat the theory that the passing of dominion over the premises was necessary to a good delivery.

6. TRIAL—SPECIAL QUESTIONS OF FACT.—Special questions submitted to a jury under Section 215, Hill's Ann. Laws, should relate to some probative fact upon which the rights of the parties depend, and which would be determinative of the case, and not to mere evidentiary facts which may be only *prima facie* evidence of other facts or of the fact to be proved.

7. APPEAL—MOTION TO STRIKE PORTION OF BRIEF.—Before an appeal is determined a motion to expunge a portion of the adverse party's brief will be denied, where it is not claimed that the matter assailed is of such a nature as to require prompt action to protect the dignity of the court, though such a motion may be considered on the question of costs.

From Multnomah : E. D. SHATTUCK, Judge.

Actions of ejectment by Isaac L. White, Ella W. Tichner and Gertrude White against Zipporah White.

This cause, and three others between the same parties, and involving the same state of facts, except that they were concerning separate parcels of real property, were, by stipulation of the parties, consolidated and tried together. The action is in ejectment, and plaintiffs

claim title to the property involved as heirs at law of
Levi White, their father ; and the defendant, by virtue
of a deed from him, signed, sealed, and acknowledged
January 17, 1894.    The deed is in form sufficient to con-
vey title, if there was a delivery.    It bears date January
17, 1893, but this is admitted to have been a mistake,
and should have been 1894, instead.    The tendency of
the testimony produced at the trial is as follows (but,
for perspicuity, it is given in a different order from that
in which it was introduced): The deed was drawn by
White's legal advisers at his instance, and, in February
or March, 1894, being then in view of the premises, he
told the defendant, who was his wife by a second mar-
riage, that he intended to give them to her.    The subject
was not mentioned again until June 28, 1894, in the
afternoon, when White called her into the smoking room,
and said to her, " Zip, this is the deed to your property,"
at the same time handing it to her.    By his direction
she inclosed it in a sealed envelope, and, at his dictation,
made the following indorsement thereon : "The here
inclosed deed for three different pieces of property was
placed in my possession by my husband, Levi White,
June 28, 1894.    Zipporah White."    He then told her to
take possession of it, and put it in the box in the safety-
deposit vault.    For the time being she put it in a private
bureau drawer, and on July 3, 1894, they went together
to the safety-deposit vault, and he opened the box.    She
then handed him the deed, but " he would not touch it,"
and directed her to make the deposit in person, and she
did as he bid her.    White had engaged the box in the
deposit vault about the twentieth of June, 1894, and at
the same time gave her a key, and told her the box was
for her use as well as his own, and deputized her in
writing to open it, and to have access to and control of
its contents.    On June 27, 1894, White made his last

will and testament, but did not devise the property in controversy. It contains a clause reciting, among other things, that he had theretofore, in consideration of natural love and affection, conveyed to his late wife, Henrietta, property of large value, all of which plaintiffs had inherited from her subject to his right of curtesy, by reason whereof he did not feel it incumbent upon him to make other or further provisions for them, or either of them, except as made by the provisions of said will. White died on the eighteenth of January, 1895, and on the twenty-third the box was opened in the presence of the defendant and counsel representing both parties, and others, with a key furnished by the defendant. It was found to contain divers papers,—among others, the deed in question and said will, together with four insurance policies (Levi White being the assured), for amounts aggregating $5,500, covering buildings situate upon parcels of the disputed premises, a deed to the defendant for property in California, two mortgages to defendant, and other papers. The deed in question was taken from the envelope, and given into the custody of B. Goldsmith, who shortly returned it to defendant, and she had it recorded.

There was evidence tending to show that in March, 1894, White expressed to the plaintiff, I. L. White, with whom he was upon terms of intimacy, his willingness to sell the property concerned for a price then named, and that he had never in any manner suggested or intimated to the said I. L. White that he had conveyed it to the defendant; that prior to the seventeenth of January, and thereafter to the twenty-eighth of June, the premises in dispute, or some portions thereof, were under lease, and that White was in receipt of the rents, collected either by himself or an agent under his direction, and that after said dates no visible change took place in the manage-

,ment, control, or enjoyment of the property; that in July, 1894, White made a written lease in his own name to one parcel for a period of five years, and in October of the same year made another to a second parcel for a period of more than one year, and collected the rents thereon, which were carried to his individual account; that in June, 1894, he caused the premises to be listed and assessed to himself as owner, and during the same year he caused repairs to be made upon the property, and paid the costs thereof; that in July he offered to sell a portion of the premises, and put a price upon it, and subsequently did the same touching another portion; that the insurance policies had been taken out prior to January, 1894, and continued to various times in 1895; that no assignment of any interest therein had been made, or notice of any change of ownership given to the insurance companies, at any time; that, at the time one of the leases above referred to was made, White discussed with his wife the propriety of making it, and the matter of the insurance policies had never been brought to her attention; that White had charge of the property with her consent, and looked after the repairs, and told her that the taxes and cost of repairs exceeded the rents. He also had charge of her individual funds, loaned them, and kept a separate account with her. The question of recording the deed had never been discussed, and none of the defendant's papers had been deposited in the box by herself, except the deed in question. It was shown by the safety-deposit record that between June 20 and December 17, 1894, White had opened the box twenty-five times— among other dates, on June 28 and 30—and at no time had it been opened by the defendant alone, but on the third day of July, 1894, it was opened by them jointly. At the proper time the trial court instructed the jury,

fully touching the issues involved, to which no exceptions were taken by either party. Other instructions were then given at the request of plaintiff's counsel, and also at the instance of defendant's counsel, covering much of the subject-matter. To the latter, several exceptions were taken and reserved, and these form the basis for the assignments of error. In connection with the general verdict, the court submitted a question for a special finding, over the objection of appellants, as follows: "Did Levi White in his lifetime voluntarily place the deed now in evidence in this action (being deed executed by himself to Zipporah White, January 17, 1894) in possession and control of said Zipporah White, the grantee named in said deed?" which was answered in the affirmative by the jury; and, the general verdict and judgment being for defendant, plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the name of *Cox, Cotton, Teal & Minor*, with an oral orgument by *Mr. Lewis B. Cox.*

For respondent there was a brief over the names of *Bronaugh, McArthur, Fenton & Bronaugh*, and *Dolph, Mallory & Simon*, with an oral argument by *Messrs. William D. Fenton* and *Cyrus A. Dolph.*

MR. CHIEF JUSTICE WOLVERTON, after making the foregoing statement of the facts, delivered the opinion.

The contention of counsel for plaintiffs in the court below was that the deed in question was not delivered within the lifetime of Levi White, the grantor; that it was his design "to hold these lands during his life, and when, in the course of nature, he was forced to relinquish them, that they should then go to the respondent"

(in other words, that he intended the deed should operate as a will, and take effect at his death, and that in the meantime it was ambulatory in its nature, subject to his control or recall, and could have been modified, revoked or destroyed, and, therefore, it never became operative as a conveyance of title, because it was never delivered); while the defendant there contended that the deed was delivered on or about the twenty-eighth day of June, 1894, and that the title to the property thereupon vested in her.  Evidence touching the acts and demeanor of the parties to the deed, their disposal of it, and their manner of treating the premises embraced in the descriptive clause prior to, at the time of, and subsequent to, the supposed delivery of June 28, was produced by both parties to the action, and introduced without objection. Among other things, the court instructed, at the instance of the plaintiffs, that "delivery may be made by words without acts, or by acts without words, or by both ; but, however and whenever made, it must be accompanied with the present intent on the part of the grantor to part with all dominion and control over the deed and the premises therein described, as their owner, and to vest in the grantee, as owner, full dominion and control over said deed and premises."  The same idea touching the necessity of an intent to part with dominion over the premises, as owner, was reiterated in the next succeeding instruction.  But in the ninth the following language is employed :   "Notwithstanding what Levi White may have done towards placing said deed in the possession of the defendant, or anything he may have said in regard thereto, if you find, from all the facts and circumstances of the case, touching his action towards the deed and the premises therein described, that it was his intention to hold dominion and control over said deed and premises during his life, and not to

absolutely devest himself of dominion and control over said deed, and dominion over and title to the premises therein described, that said deed was to take effect only at his death, and that by said deed and his will executed on June 27, 1894, he intended to make one testamentary disposition of all his property and estate, then and in that event the deed is null and void, and your verdict must be for the plaintiffs.'' Thus was the idea just alluded to here again emphasized. The first two instructions qualify dominion by the use of the words ''as owner,'' while no such qualifying words appear in the one last above quoted.

1.   Let us inquire now whether these instructions give a correct exposition of the law as applied to the delivery of a deed—not that error may be predicated thereon, for they were given at plaintiffs' request, but it will serve to test the correctness of those of the defendant's instructions to which objections were made. It is deemed pertinent to the inquiry, also, that the defendant's instructions were submitted to the jury after those of the plaintiffs ; and we must assume that they were drawn to meet the exigencies of the case as it then appeared to counsel, in view of their contention.   The parties agree that a delivery of the deed was essential to pass the title, and all the authorities are substantially of one accord touching the requisites of a good delivery.   We will recall some of them :  ''No formality, either of words or action, is prescribed by the law as essential to delivery.   Nor is it material how or when the deed came into the hands of the grantee.   Delivery, in the legal sense, consists in the transfer of the possession and dominion ;  and whenever the grantor assents to the possession of the deed by the grantee, as an instrument of title, then, and not until then, the delivery is complete.   The possession of the instrument by the grantee may be simultaneous with this

act of the grantor's mind, or it may have been long before; but it is this assent of the grantor which changes the charactor of that prior possession, and imparts validity to the deed:" 1 Greenl. Ev. (14 ed.), § 568a, note 1. "Whether there has been a delivery of the deed is a question of fact, rather than of law, depending upon the intent of the grantor to vest an estate in the grantee. If a deed be so disposed of as to evince clearly the intention of the grantor that it shall take effect as a conveyance, it is a sufficient delivery:" 2 Jones, Real Prop., § 1220. "The delivery of a deed is essential to the transfer of the title. It is the final act, without which all other formalities are ineffectual. To constitute such delivery, the grantor must part with the possession of the deed, or the right to retain it:" *Younge* v. *Guilbeau*, 70 U. S. (3 Wall.) 636, 641. "Leaving out all questions of acceptance by the grantee, we think that, so far as the grantor is concerned, any acts or words, either or both, whereby he in his lifetime parts with all right of possession and dominion over the instrument, with the intent that it shall take effect as his deed, and pass to the grantee, constitute a delivery of a deed of conveyance, and that nothing less will suffice:" Virgin, J., in *Brown* v. *Brown*, 66 Me. 316, 321.

"To make the delivery good and effectual, the power of dominion over the deed must be parted with. Until then the instrument passes nothing; it is merely ambulatory, and gives no title:" *Cook* v. *Brown*, 34 N. H. 460, 475. "Nor is any particular form of ceremony necessary to constitute a sufficient delivery. It may be by acts or words, or both, or by one without the other; but what is said or done must clearly manifest the intention of the grantor and of the grantee that the deed shall at once become operative to pass the title to the land conveyed, and that the grantor loses all control

over it :" *Byars* v. *Spencer*, 101 Ill. 429, 433 (40 Am. Rep. 212). "In all cases of this class, whatever physical disposition of the instrument may have been made, the fundamental inquiry is whether the minds of the parties were agreed in regarding the deed as presently the deed of the grantee, and without any condition or reserve :" *McCullough* v. *Day*, 45 Mich. 554, 558 (8 N. W. 536). "This is settled : that delivery is not complete until the person delivering (grantor) has so dealt with the instrument delivered as to lose all control over it. And whether he has so dealt with the instrument depends upon the intent to be deduced from all the surrounding circumstances—the *res gestæ:*" THORNTON, J., in *Hibberd* v. *Smith*, 67 Cal. 547, 552 (56 Am. Rep. 726, 4 Pac. 475). "To constitute a delivery, the grantor must part with the legal possession of the deed, and all right to retain it. The present and future dominion over the deed must pass from the grantor. And all this must happen in the grantor's lifetime :" *Porter* v. *Woodhouse*, 59 Conn. 568, 574 (21 Am. St. Rep. 131, 13 L. R. A. 64, 22 Atl. 300). Mr. Freeman, in an able, elaborate, and thoroughly complete monographic note to *Brown* v. *Westerfield*, 53 Am. St. Rep. 537 (66 N. W. 439), says : "The delivery of a deed, in the law of conveyancing, is a transfer of it from the grantor to the grantee, or to some third person for the grantee's use, in such a manner as to deprive the grantor of the right to recall it at his option, and with the intent to convey title."

Our own expressions are in line upon the subject : "The result of the authorities is that, after a writing has been signed, and sealed, and acknowledged, any acts, or words, or circumstances decisive of the intention of the grantor to consummate and to part with it are sufficient to constitute a delivery, and give it validity as a deed :" Mr. Chief Justice LORD, in *Fain* v. *Smith*, 14 Or. 82, 90

(58 Am. Rep. 281, 12 Pac. 370).  "But if the grantor
parts with all dominion and control over the deed, re-
serving no right to control it or alter its provisions, it is
a good delivery:"  Mr. Chief Justice Bean, in *Hoffmire*
v. *Martin*, 29 Or. 240 (45 Pac. 754).  And in a late case
it is said:  "A delivery is effected either by a manual
transfer of the deed from the grantor to the grantee, or
to some third party for his use, or by doing some act, or
saying something, or by both, whereby the grantor man-
ifests an unequivocal intention to surrender the instru-
ment so as to deprive himself of all authority over it or
the right to recall it, and to consummate the convey-
ance:"  *Payne* v. *Hallgarth*, 33 Or. 430 (54 Pac. 164).

The authorities are very numerous to the same effect,
but those cited are sufficient for our purpose, which is
to show that the paramount idea attending the requisites
of a delivery is that the dominion and control of the
instrument shall pass to the grantee, with intent on the
part of the grantor that it shall become presently opera-
tive, and that the dominion and control over the prem-
ises do not enter into the transaction as an element
necessary to the vesting of title in the grantee.  In none
of the definitions to which we have made reference, nor
in any other that we have been able to find, is there the
faintest allusion that a present transfer of dominion over
the premises is at all necessary to the delivery.

Many of the authorities use the expression "with
intent that the title shall pass," but none, as said by the
court below, "with intent to part with dominion over
the premises described as owner," or otherwise.  It will
be noted from the citations that it is unusual and out of
line to refer in any manner to the disposal of the domin-
ion over the premises, in defining "delivery."  If, how-
ever, it was meant thereby to convey the same idea as
"with intent to pass the title," or "to consummate the

conveyance," or other equivalent expression as voiced by the authorities, and if so understood, there could probably be no objection to its use in that connection. But the ninth instruction, given at plaintiff's request, so extended its meaning as to embrace an intent to part with the dominion over the premises unqualified by the words "as owner," and to vest such dominion in the grantee ; thus making the delivery depend upon the intent to part with dominion over the premises,—an element entirely foreign to any which go to constitute a good delivery of a deed. Construing all the instructions given on plaintiffs' suggestion together upon the subject, they must be taken as promulgating the idea that there must be an intent on the part of the grantor to transfer dominion over the premises as well as the deed, and, therefore, did not correctly state the law of the case.

Under plaintiffs' theory, if the law was as counsel put it in these instructions, it would afford a greater incentive to the jury, under the evidence, to conclude that by reason of the fact, as disclosed, that no apparent change had taken place regarding the possession and dominion over the premises, no delivery of the deed had taken place, than if the law had been correctly expounded. The defendant was proceeding upon the theory that a delivery of the deed had taken place prior to the death of White, and evidence was admitted touching the circumstances attending the disposal of the deed, after being signed, sealed, and acknowledged, and also of the manner in which the respective parties treated the premises embraced by the description from a time prior to the signing of the instrument up to the decease of White ; and in this there could have been no impropriety. The use of the premises by the parties to the transaction would serve to explain the purposes to be subserved by their disposal of the deed. If possession

was at once taken by the grantee, the circumstance would serve to support the idea of a delivery (2 Jones, Real Prop. § 1227), while the converse would be true if the possession continued with the grantor, without any apparent change from that which obtained prior to the alleged grant. And more especially would this be the case where the grantor continued to lease the premises and insure the buildings situate thereon in his own name. The jury were entitled to all these facts, as they served to throw light upon the pivotal question, whether White intended to vest the title in his wife prior to or at the time of his death, and as to the purposes for which they might consider the same they were fully and properly instructed. This is conceded.

We come now to the instructions requested by the defendant and given by the court. She was resisting plaintiff's theory, and opposing it with her own, and combating as well the erroneous instruction alluded to, and it is in the light of these relative theories and contentions of the respective counsel we must consider the subsequent instructions. We must step into the jury box, as it were, and listen to the instructions as if they were addressed to us as jurors, and for our direction and guidance in the ascertainment of results under the evidence adduced. Thus situated, we must interpret them, if obscure, and determine how the jury must have been impressed with them. If such impressions were in accord with the law of the case, as applicable to the issues, there is no just cause for a reversal. Of course, if the instructions are palpably bad, as matter of law, the error is vital.

2. The defendant's third instruction, complained of, is as follows : "If you find from the evidence that Levi White in his lifetime actually delivered the deed in question to the grantee, Zipporah White, with the intention

of investing her with title to the lands described in it, that is sufficient to establish her title.'' Plaintiff's claim that this charge is susceptible of the construction that if the grantor intended to vest the title, not then, but at some future time, or at his death, as counsel contended at the trial was White's real purpose, then the requirements of a good delivery sufficient to carry the title to the grantee had been fulfilled. We do not think that such is the case. The instruction, while not technically correct in its meaning, is not materially obscured. It was evidently meant thereby that if there was a manual transfer of the deed by the grantor to the grantee, with the intention of vesting title to the lands described, it was sufficient to carry title. The intention to invest the title presently can very well be implied from the context; but the jury had already been twice instructed concerning the present intent in that regard, and they could not have been misled by it. There is a fault in the instruction, by the attempt to define ''delivery'' by the use of the same term, or its derivative, which serves to explain the fourth instruction, to which a much stronger objection is urged.

3. This instruction, to which objection is especially made, is as follows: ''If you shall not find that an actual, manual delivery of the deed was made by Levi White—that is, that it was not handed or given directly to Zipporah White, the grantee—then it will be your duty to inquire into the circumstances of the execution of the deed, and as to what Levi White, the grantor, did and said, to ascertain his intention in the premises. The main thing which the law looks at is whether the grantor indicates his will that the deed should pass into the possession of the grantee. And if you find from the evidence that Levi White, after executing and acknowledging the deed in question, either by his acts or words, or both,

expressed his intention to consummate and part with it, or surrender its custody, then I charge you it became a valid grant, and your verdict must be for the defendant." In this fourth charge the court tells the jury, in effect, that if they should not find there had been a delivery of the deed, made by an actual passing from the hand of the grantor to that of the grantee, consummated as contemplated by the third charge, then it was their duty to inquire into the circumstances of the execution of the deed, and as to what White said and did, to ascertain his intention in the premises. This was but another way of getting at the same thing as expressed by plaintiff's counsel—that a "delivery may be made by words without acts, or by acts without words, or by both," but, withal, the intent that the deed should at once become operative must appear. Now, suppose the deed did not pass from hand to hand; if the grantor indicated his will that dominion and control over it should pass to the grantee, and his purpose was to consummate the transaction—that is, vest title in the grantee—and the jury so found from all the evidence, that would be a sufficient delivery, whether the deed actually passed into her hands or not. It must be conceded that the instruction is far from being clear, but the purpose of the person drafting it is reasonably manifest, and we must presume that the jury rightly understood it, so that we cannot say it amounts to a misdirection. There was some controversy as to whether there was a hand to hand transfer of the deed. The defendant testified directly to such a transaction, but plaintiffs challenged the truth of her statement, and the purpose for which it was made, if made as she testified—whether to take effect presently or at his death—and this made it proper for the court to instruct touching both phases of a delivery. There was no intention to charge the jury that a simple handing of the deed

by the grantor to the grantee constituted a good delivery, and, manifestly, they did not so understand it. The language which obtains in the latter part of the instruction is almost, and is in effect, the same as used by Mr. Chief Justice LORD in defining "delivery" in *Fain* v. *Smith*, 14 Or. 90 (58 Am. Rep. 281, 12 Pac. 365). We think there was no appreciable error in this instruction.

4.   The next three instructions against which exceptions were taken are the sixth, seventh, and eighth. The sixth charge is as follows:  "The fact, if it be a fact, that the deed in question was not recorded until after the death of Levi White, in no wise affects its validity.   A deed is as effectual to pass the title between the parties without being recorded as if recorded."   It is objected that this instruction virtually withdrew from the jury the fact of the nonrecording of this deed until after White's death, as a circumstance for their consideration in determining the question of delivery ; in other words, that it invaded the province of the jury, and told them that it should have no effect with them, when they had formerly been told to consider it, with all the other facts and circumstances in the case, in arriving at their conclusion.   We do not understand that such is the effect of the instruction.   It should be read in connection with the general instruction as given by the court of its own motion, and as given at the request of the defendant. If so considered, there is no confusion.   The jury were given to understand from the whole charge that, while the recording was a circumstance which they should consider, with the other facts in the case, in determining whether a delivery had been accomplished, yet that a deed, properly executed and delivered, was competent to pass the title without the act of recording.

5.   By the seventh, the court charged the jury " that the question of possession of the lands conveyed does

not affect title to the lands. If it were understood between the parties that Levi White should hold possession of the lands conveyed during his lifetime, such understanding would not prevent title passing to Zipporah White. The criticism upon this instruction is like the objection to the sixth—that it necessarily withdraws from the jury the consideration of certain evidence of the highest importance, which had been submitted under the general charge for their consideration. The latter part of the instruction shows that it was to apply, if it was understood between the parties that White should hold possession during his lifetime, and this matter of the understanding in that regard was left to the jury. Defendant was combating plaintiffs' theory, as voiced by their instruction that the passing of dominion over the premises was necessary to a good delivery of the deed; and it was the apparent purpose of this instruction to have the jury distinguish between the deed and the premises, and the effect to be given to a transfer touching the dominion of either. Of like purport and effect is the eighth instruction.

Under the instructions the plaintiffs had ample benefit of the law, and the jury were at full liberty to adopt their theory of the case, had the evidence adduced at the trial so warranted. That the jury understood the purport of the defendant's instructions as we have here interpreted them, there can scarcely be any doubt.

6. This leaves but one question, touching the submission to the jury of the special interrogatory to be returned along with their general verdict. The statute provides that the court may in all cases instruct the jury, if they render a general verdict, to find upon particular questions of fact, to be stated in writing: Section 215, Hill's Ann. Laws. In several cases in this state, where the trial court had refused to submit to the jury partic-

ular questions at the request of one of the parties to the action, it has been held that it was a matter wholly within its discretion, and, therefore, that this court would not review its action in that respect: *Swift* v. *Mulkey*, 14 Or. 59 (12 Pac. 76), *Wild* v. *Oregon Short Line Ry. Co.*, 21 Or. 159 (27 Pac. 954), *Knahtla* v. *Oregon Short Line Ry. Co.*, 21 Or. 136 (27 Pac. 91). But the question here raised, where the particular question had been submitted under objection, is a new one in this court. The ground of the objection is that the question was inconclusive, immaterial, and misleading, and it is insisted that by reason thereof it was error to submit it. The particular questions of fact which the court is empowered to submit along with the general verdict, by statutory intendment, should be such as are material and pertinent to the issues involved in the case; otherwise the law could serve no good purpose: *Maxwell* v. *Boyne*, 36 Ind. 120; *Fowler* v. *Hoffman*, 31 Mich. 215; *Crane* v. *Reeder*, 25 Mich. 303. The particular interrogatories to which the statute relates were probably intended to enable the court and counsel to determine the grounds upon which the jury has based the general verdict; but to permit it to be interrogated touching matters which could have nothing to do with the controversy could not subserve such a purpose, and the tendency of such a practice would be to confuse and mislead the jury, as it pertains to the general result. So it would seem, as a general rule, that the questions should relate to some probative fact upon which the rights of the parties depend, and which would be determinative of the case, and not to mere evidentiary facts, which may be only *prima facie* evidence of other facts, or of the fact to be proved. It is rather the ultimate probative fact from which a conclusion of law is deducible, or one from which the existence of such ultimate fact necessarily

follows, than an intermediate probative fact, not deter-
minative in its nature, upon which another or even the
ultimate fact may depend, to which the statute pertains :
*Chicago & N. W. Ry. Co.* v. *Dunleavy*, 129 Ill. 132, 143
(22 N. E. 15); *Chicago City Ry. Co.* v. *Taylor*, 170 Ill.
49 (48 N. E. 831); *Hatfield* v. *Lockwood*, 18 Iowa, 296;
*Thomas* v. *Schee*, 80 Iowa, 237 (45 N. W. 539). And
yet, says ADAMS, C. J., in *Hawley* v. *C. B. & Q. Ry. Co.*,
71 Iowa, 721 (29 N. W. 790), "We do not say that a
party may not be entitled to have a special interrogatory
submitted, even where it is such that an answer most
favorable to the party would not entitle such party to a
verdict." The nature and form of the particular ques-
tion are largely within the discretion of the trial judge,
and unless it is apparent that there was a clear abuse of
such discretion, or unless the question submitted even
upon immaterial or inconclusive matters was palpably
misleading as to the main issue, or could not be answered
without danger of confusion or misrepresentation (*Phœ-
nix* v. *Lam*, 29 Iowa, 352), it would not afford ground
for reversal. Now, the question propounded was not of
a decisive fact from which a conclusion of law is directly
deducible, but it was not altogether irrelevant to the
issues involved, and we cannot say that it was an abuse
of the court's discretion to submit it. And, further-
more, it does not appear to be of such a nature as that
the jury was probably misled by it, and surely it might
have been answered without confusion or misrepresenta-
tion ; so we conclude that the submission of the question
was not cause for reversal.

                                      AFFIRMED.

Decided 8 November, 1897.

ON MOTION TO STRIKE OUT PARTS OF RESPONDENT'S
BRIEF.

[50 Pac. 801.]

MR. CHIEF JUSTICE MOORE delivered the opinion.

7.   This is a motion to expunge from respondent's brief all that portion of the will of Levi White, deceased, not incorporated in the bill of exceptions.   The record shows that plaintiffs, as heirs at law of the deceased, commenced actions against the defendant and her tenants to try the title to, and recover the possession of, certain real property of which defendant claimed to be seized in fee by the deed of Levi White.   The defendant having been substituted for her tenants, the actions were consolidated, at the trial of which the jury found a special verdict to the effect that Levi White voluntarily delivered said deed to defendant, for whom they also returned a general verdict, and, judgment having been rendered thereon, plaintiffs appeal.   The bill of exceptions shows that in the will left by the deceased he made no devise of any of the real property in question, but provided therein for the plaintiffs by name, and in the ninth paragraph thereof the testator explains his reason for not making further allowances to them.   This paragraph only is set out in the bill of exceptions, but counsel for respondents have published in their brief what purports to be a copy of the will, all of which appellants move to strike out, except said paragraph nine.   If this was a proceeding for the retaxation of costs on appeal, by reason of the publication of immaterial matter in respondent's brief, the

necessity for a motion to strike out would be apparent, in which case if it should seem that such matter had been intentionally inserted with a view to augment the expense of the trial, the motion to eliminate should, in justice, be allowed ; but before the cause has been tried, we fail to see wherein the appellants have been or can be injured by the publication of which they complain.   In the preparation of briefs, counsel for the parties litigant must be allowed to exercise a liberal discretion in determining what matter should be inserted or excluded therefrom, or if this court is to assume and exercise the functions of a censor, and thereby prohibit the publication of briefs, except such as meet its approval, the practice might result in the impairment of their usefulness.   The object of a brief is to lessen the labors of the judges of appellate tribunals, and it will be admitted that the labor demanded of them in the consideration of causes is always in an inverse ratio to the amount of care and thought expended by counsel in the preparation of their briefs. Such being the case, it would be highly improper to strike from a brief anything that might tend to aid the court in the performance of its duties.   In the case at bar it is not claimed that the matter assailed in the brief is sham, frivolous, or impertinent, thereby necessitating prompt action to protect the dignity of the court, and hence it follows that the motion must be overruled, and it is so ordered.

MOTION OVERRULED.