Decided 19 February, 1900.

## SOUTH PORTLAND LAND COMPANY *v.* MUNGER.

[54 Pac. 815, 60 Pac. 5.]

1. SERVING NOTICE OF APPEAL ON ALL TENANTS IN COMMON.—A decree against tenants in common rendered on a bill against them all to quiet title may be appealed from by a part of such tenants, without serving notice on the others, though the decree is joint in form, since the interests of the co-tenants are distinct and several, so that the decree may be reversed as to appellants without affecting the decree in so far as it concerns the nonappealing defendants.

2. WAIVER OF JURISDICTION BY ANSWERING CROSS COMPLAINT.—Where, in an action at law to recover possession of land, defendant filed a cross complaint, alleging an equitable defense, and plaintiff, after a motion to strike and demurrer to such cross complaint had been overruled, answered, the right to insist that the action be tried at law was waived, since by answering plaintiff voluntarily submitted to the equitable jurisdiction:   *Scheland* v. *Erpelding,* 6 Or. 258, followed;   *Dolph* v. *Barney,* 5 Or. 191, distinguished.

3. EQUITABLE CROSS COMPLAINT—REFORMING DEED FOR MUTUAL MISTAKE.—An equitable cross complaint in an ejectment action whereby defendant claims title to the land in controversy and alleges that one of the deeds through which he claims is insufficient to convey the legal title owing to certain informalities resulting from a mutual mistake of the parties thereto, and praying for its reformation so that it will accord with the intention of the parties, states ground for equitable relief under Section 381 of Hill's Ann. Laws.

4. JURISDICTION UNDER EQUITABLE CROSS BILL.—The jurisdiction obtained by a court of equity through a cross bill in an action at law under Section 381, Hill's Ann. Laws, is the same as the original jurisdiction at common law, the relief afforded under such a cross bill is as broad as that which may be obtained by an original bill, and the remedy may be invoked whenever the law remedy is not as prompt, adequate, and efficient as that in equity.

5. AMENDING PLEADINGS TO CONFORM TO PROOFS.—Where in an ejectment action defendant filed an equitable cross complaint alleging title in himself and that there had been a mutual mistake in the description in one of his deeds,

the original of which he alleged to have been lost, it was proper to permit the filing of an amended cross complaint to conform the allegations to the proofs, the deed having been found, and it appearing that the mistake was in the record and not in the original deed.

6. PLEADING—CROSS COMPLAINT FOR SPECIFIC PERFORMANCE.—Where plaintiff claimed land as heir of C, and defendant filed a cross complaint, claiming through a deed executed by C to his wife for a valuable consideration, alleging that she went into possession, and subsequently conveyed the land to plaintiff's grantor, that the deed from C to the wife was insufficient to pass the legal title, owing to a mutual mistake in writing the description, and praying that plaintiff be adjudged owner, and that the deed to the wife be reformed and corrected, such complaint stated facts sufficient to authorize relief by way of specific performance of the contract to convey, since the deed may be treated as such a contract.

7. CONTRACT TO CONVEY—EVIDENCE OF CONSIDERATION.—Where a defective deed is sought to be treated as a contract to convey and as a basis of a suit for specific performance, the deed itself, which recites a consideration, is *prima facie* sufficient evidence that it was based on a consideration.

8. EVIDENCE OF DELIVERY OF DEED.—Evidence that a deed was recorded,—that it was in the possession of the grantee, and that she dealt with it and the property as if they were her own; that she placed the property on the market and afterwards sold it, delivering such deed to her grantees at the time she made the conveyance to them,—is sufficient to establish the delivery of the deed: *Serles* v. *Serles*, 35 Or. 289, cited.

From Multnomah :  ALFRED F. SEARS, JR., Judge.

This was originally an action by Abbie K. Munger to recover possession of certain real property from the South Portland Land Company.   Defendant filed a cross complaint alleging an equitable defense, whereupon the law action was stayed and the disputed questions tried in equity.   Various persons having been brought in, a default decree was entered against some defendants and a final decree on the merits against the others.   From this adjudication four defendants appealed but served the notice on the land company only.   A motion to dismiss was overruled and the final decree confirmed.   The facts are fully stated in the opinions.

MOTION OVERRULED :   AFFIRMED.

Decided 24 October, 1898.

ON MOTION TO DISMISS APPEAL.

[54 Pac. 815.]

*Mr. William D. Fenton,* for the motion.

*Messrs. William W. Thayer* and *Alex. Bernstein, contra.*

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

1.   This cause comes here on appeal from a decree on the cross complaint of the South Portland Land Company, filed to enjoin the further prosecution of an action for the possession of real property, instituted by Abbie K. Munger against said land company, to correct an alleged mistake in a certain deed which plaintiff claims constitutes a link in its chain of title, and to quiet its title to the premises in dispute.   Abbie K. Munger, in the complaint in said action, alleges that she is the owner in fee of an undivided one-half of such premises, and prays judgment accordingly.   The cross complaint against her joins with her, as defendants, her husband and the heirs at law of Mary Austin, deceased, and their respective spouses.   All the defendants so joined with her were directed to be brought in by order of the court.   Unless plaintiff is entitled to the relief demanded, the pleadings show that Abbie K. Munger is the owner in fee of an undivided one-half, and the heirs of Mary Austin, eight in number, are each the owner of an undivided one-sixteenth of said premises.   William Austin, Arthur Austin, Garfield Austin, and Olive Black (*nee* Austin), four of such defendants, made no appearance in the court below ; whereupon a guardian *ad litem* was appointed for Garfield Austin, he being a minor, and default entered against the other three.   Mary Jackson (*nee* Austin), the owner of a one-sixteenth interest, filed a disclaimer.   The other Austin heirs, three in number, to wit, Frank Austin,

George Austin, and Harvey H. Austin, appeared, and with the defendant Abbie K. Munger contested the suit. The four defendants last named attempted to appeal to this court by serving a notice thereof upon the plaintiff only, which filed a motion to dismiss because the defendants William, Arthur, and Garfield Austin, Mary Jackson, and Olive Black were not served with notice, nor made parties to the appeal. This presents the sole question for our disposal. It is contended—First, that all the co-tenants are necessary parties to the proceeding put in motion by the cross complaint to reform the deed and quiet title, and that the suit could not proceed without them ; hence that this court could not acquire jurisdiction to hear and determine the controversy upon the appeal without the presence of all such parties ; and, second, that the decree entered below is joint, and hence that all parties to it must be joined in the appeal or served with notice before appellate jurisdiction could attach.

Mr. Justice Thayer, in *Minter* v. *Durham*, 13 Or. 470, 481 (11 Pac. 231), was very much in doubt whether two or more tenants in common had the right to join as complainants in an action of ejectment, and said, in speaking for the court, that "tenants in common hold by unity of possession, but they hold several and distinct freeholds, and, under our statute, the action to recover possession of real property includes a recovery of the estate which the demandant has in it, and which must be a legal estate." The converse of the proposition is undoubtedly true,— that the several and distinct freeholds of each co-tenant may be the subject of a separate action for its recovery. As in law, so in equity ; to quiet title, the party claiming the whole may proceed separately against each person claiming to hold such an interest in the disputed premises ; and, while it may be convenient—perhaps proper— to join all the co-tenants claiming adversely, yet it is not

indispensable or necessary that it should be done. And, even when joined, a decree against them must, from the very nature of the case, operate severally upon the distinct freehold interest of each co-tenant, and not jointly upon all. A judgment or decree may be joint in form, yet several in fact; and the rule seems to be that a party showing such a distinct and severable or separate interest may prosecute the appeal without joining co-parties below who are not identified or interdependent in interest; and the appellate tribunal may reverse or modify the judgment or decree without affecting the rights of the parties not before it: 2 Enc. Pl. & Prac. 186–188. Raney, J., in *Guarantee Trust Co.* v. *Buddington*, 23 Fla. 514 (2 South. 885), after alluding to the rule which requires the parties to a decree which is in law and in fact joint to unite in an appeal, says: "This rule, however, does not preclude any one party who may be aggrieved by the decree in his separate interest, or several parties who may be aggrieved as to their united interests, from taking, the former his individual appeal, and the latter their joint appeal, although there may be numerous other parties adjudged against by the same decree, but not united in interest with such individual or joint parties in the matter so decreed as to him or them."

This doctrine does not dispense with the requirement that all parties who would be affected adversely, and whose interests would be in conflict with the reversal or modification of the decree appealed from or sought to be reviewed, must have legal notice of the appeal. If the relief sought by the appeal is of such a nature or character that it cannot be granted without adversely affecting parties not before it, either voluntarily as appellants or duly notified as respondents, then the court is without power or jurisdiction to proceed, and the appeal must be dismissed. But, if it appears that the special relief sought

can be granted without affecting the interest of any party to the suit not a.party to the appeal, then the appellate jurisdiction is established, and the power to adjudicate concerning it is clear ; and this perhaps affords a reasonable and fair test of the joint or several character of the decree which it is sought to have reviewed. The parties not appearing in the case at bar, if the facts set forth in the cross bill are true, are tenants in common with the defendants appealing, each holding a several and distinct freehold interest in the premises in dispute. The decree of the court below has cut them off, and the plaintiff has obtained effectual relief against them. The other defendants, not being satisfied with the action of the court below, have appealed and served the plaintiff, an adverse party. They seek to have the decree reversed as to them, and this the court may do owing to the distinct and several interests of the appealing defendants, without in the least disturbing the interests of the nonappealing defendants, or affecting the decree below, which determines their adverse claim in favor of the plaintiff. This being so, it is clear the appeal should not be dismissed, and the motion is therefore denied.      Motion Overruled.

Decided 19 February, 1900.

On the Merits.

[60 Pac. 5.]

On September 17, 1896, Abbie K. Munger commenced an action against the South Portland Land Company, plaintiff, to recover possession of the undivided one-half of the west half of what is known as the "William and Mary T. Collins Donation Land Claim," situated in sections 27 and 34, township 1 south, range 1 east of the Willamette Meridian, in Multnomah County, Oregon. On October 17, the South Portland Land Company filed an answer to the complaint, denying all the material allega-

tions thereof, except the incorporation of plaintiff; and, by way of a further and separate defense, set up affirmatively that said company was the owner in fee simple and in possession of the premises, and that it and its grantors had been in the actual, open, notorious, adverse, exclusive, and continuous possession thereof for more than ten years prior to the commencement of the action. Further answering, it alleged that said company had "no plain, speedy, and adequate remedy at law; that its defense in part is based upon matters and its affirmative relief is wholly cognizable in a court of equity, to wit: the correction of a mistake in the description of the property in a deed which forms one of the links of the defendant's chain of title, which mistake was the mutual mistake of the parties to said deed, and upon other equities existing in favor of the defendant, and against the plaintiff, all of which are fully alleged in a complaint in equity in the nature of a cross bill filed herewith in this court, to which reference is hereby made." Thereupon the company filed a complaint in equity, in the nature of a cross bill, against the plaintiff in the action, joining with her Albert Munger, her husband. Other persons were subsequently brought in and made parties defendant. The original was superseded by an amended cross complaint, which was filed by leave of the court to conform to the proofs, and, for all practical purposes, it will only be necessary to take note of the allegations of the latter.

Omitting matters of form, it is alleged, in substance, that on November 13, 1865, a patent was issued under the donation act to William Collins and Mary T. Collins, his wife, for a tract of land containing three hundred and eighteen and fifty-four hundredths acres, situate in sections 27 and 34, township 1 south, range 1 east of the Willamette Meridian, the west half to the husband and the east half to the wife; that on the twenty-second day

of June, 1881, William Collins, for and in consideration of $2,000 to him in hand paid by his said wife, made, executed, duly acknowledged, and delivered to her his certain conveyance, by which he remised, released, and forever quitclaimed unto her all his right, title, and interest in and to said donation land claim ; that said deed so executed and delivered was recorded on October 8, 1881, at page 82 of Deed Book No. 49 of the Record of Conveyances of the County of Multnomah, State of Oregon ; that it was the intention of both parties to said conveyance that William Collins should and would thereby release, remise, and forever quitclaim unto Mary T. Collins all his right, title, and interest in and to the whole of said donation land claim, but, by mistake of the draftsman or scrivener who drew the deed, the meridian, county, and state in which said land was situated were omitted, and should have been inserted as the Willamette Meridian, County of Multnomah and State of Oregon; that said deed, at the time it was spread upon the records, was not entitled by the laws of Oregon to be recorded for want of a proper certificate to the notary's authority and the genuineness of his signature, and a certified copy of said attempted record of said deed could not, therefore, be received in evidence in the action of ejectment ; that, at the time of the filing of the cross complaint, the existence and whereabouts of said original deed was unknown, and the same was lost, but has since been discovered, from which it appears that the entry upon the said Record Book No. 49 has, by fraud or mistake on the part of some person unknown to the plaintiff, been altered by the erasure of "thirty-four" in that part of the description wherein "thirty-four" appears in the original deed, and the insertion of "thirty-seven" instead thereof, so that the description in the certified copy of said deed as now recorded does not conform to the true

section, as mentioned in said patent and contained in said quitclaim deed, thereby casting a cloud upon plaintiff's title to said land.

And the plaintiff further avers that the private seal affixed to said original deed is a printed impression of the letters "L. S.," inclosed in a printed bracket, and has no scroll or sign, made with the pen or otherwise, as a seal; that the defendants claim and assert that said deed is not sealed, and is therefore void, which claim also casts a cloud upon plaintiff's title, but that said William Collins intended to and did deliver said instrument to his wife as and for his sealed deed, and intended to seal the same, but by mistake of the scrivener failed to do so; that said mistakes were each and all of them mutual as to the parties to the said deed, who both intended that said description in the deed should be the true and correct description of the land, and free from each and all of said mistakes; that at the time of the execution of said deed William Collins was the owner in fee simple of the west half of said donation claim, which he agreed, for the consideration of $2,000, to convey to his said wife, in fee simple, and that said quitclaim deed was executed in pursuance of said agreement, but that, by the mutual mistake of the parties, the premises were misdescribed; that thereupon, and after the execution of said deed, William Collins delivered to the said Mary T. Collins the possession of the said west half of said claim and the whole thereof, and she and her successors in interest, including this plaintiff, have ever since been, and are now, in possession, claiming to own the same in fee simple; that on September 1, 1887, Mary T. Collins, for the consideration of $8,000, sold, and by warranty deed conveyed, the whole of said donation land claim to Albert L. Maxwell and James H. Huddleson, and that the plaintiff, by *mesne* con-

36 OR.—30.

veyances, subsequently became the owner thereof; that, by reason of the mistakes in said conveyance to Mary T. Collins, the defendant Abbie K. Munger, and the heirs at law of Mary T. Austin, claim that at the time William Collins died he was the owner of the legal title to the west half of said claim, and that they, as his heirs at law, are the owners in fee simple thereof; and that Abbie K. Munger commenced an action at law to recover possession of the undivided half of the west half of said claim. The plaintiff, for a further cause of suit against the defendants, after reiterating, in substance, the matters theretofore alleged in said complaint, further alleges that neither of the defendants, their ancestors or predecessors in interest, have been seised or possessed of said lands, or any part thereof, within ten years prior to the ninth day of September, 1896, or since June 22, 1881, and that plaintiff and its predecessors in interest have for more than ten years prior thereto been in the actual, open, notorious, adverse, exclusive, and continuous possession of said premises, and the whole thereof, claiming to own the same in fee simple, under color and claim of title; that, by reason of said claim of the defendants hereinbefore set out, plaintiff's title is clouded and rendered insecure, and that such contention casts a cloud upon plaintiff's title, which should be removed, and its title quieted as against the claim of said defendants.

Defendants filed a motion to strike out, and a demurrer to said amended cross complaint, which being overruled, they filed an answer, denying each and every material allegation of said complaint except the statement that the seal to the original deed is a printed impression of the letters "L. S.," inclosed in printed brackets, and that it has no other scroll or sign, made with the pen or otherwise, as a seal; and, further answering, they allege, among other things, that the deed is not sealed, and is therefore void;

that they are the owners in fee of an undivided interest in the west half of said donation land claim ; and pray that their title may be quieted. To this a reply was filed. The decree being for the plaintiff, certain of the defendants appeal.                                                     Affirmed.

For appellants there was a brief over the names of *R. & E. B. Williams*, *William Wallace Thayer*, and *Bernstein & Cohen*, with an oral argument by *Messrs. Richard Williams* and *Alex Bernstein*.

For respondent there was a brief over the name of *Fenton, Bronaugh & Muir*, with an oral argument by *Mr. William D. Fenton*.

Mr. Chief Justice Wolverton, after making the foregoing statement of the facts, delivered the opinion.

2.   The interposition of the motion to strike out and the demurrer to the cross complaint involves a matter of practice, as well as the jurisdiction of the court to take and entertain cognizance of the subject-matter of the controversy. It is first insisted on the part of the defendants that the plaintiff, having pleaded a full defense in the action at law, not only by putting at issue every material allegation of the complaint therein, but by setting up affirmatively that it was the owner in fee simple and in the legal possession of the premises, is precluded, under the practice, from filing at the same time a cross complaint in equity praying a stay of the action until the case has been disposed of in the equity forum. In *Dolph* v. *Barney*, 5 Or. 191, 215, it was held by this court that a cross bill was properly stricken out on motion, where the defendant in the action at law had specifically denied the plaintiff's title, and set up title in himself. The appeal in that case was from the judgment in the action, and it is now suggested that the question of practice thus raised

was not before the court, and hence that case is not controlling as a precedent : *Oatman* v. *Epps*, 15 Or. 437 (15 Pac. 709), was an action to recover real property. The defendant, after denying the plaintiff's ownership, filed a cross complaint in equity, to which a demurrer was interposed and sustained, and the complaint dismissed. An appeal was taken in the action, and error predicated upon the judgment therein. In passing upon the question, this court, speaking through Mr. Justice Thayer, said : "An examination of the code will show that when such complaint is filed it stays the proceedings at law, and the case thereafter proceeds as a suit in equity, and in which such proceedings at law may be perpetually enjoined by final decree, or allowed to proceed in accordance with such final decree. The effect of filing such a complaint is the commencement of a suit in equity, which subordinates the proceedings at law until the relief arising out of the facts requiring the interposition of a court of equity, and material to the defense in the action at law, is obtained." In a later case (*Scheiffelin* v. *Weatherred*, 19 Or. 172, 23 Pac. 898), it was contended that the cross complaint was merely auxiliary to the defense in the law action. But this view was not adopted, the court saying : "The suit in such a case is really as independent of the action at law as though it were commenced by original summons. The object of the provisions of the code regulating the proceeding was to avoid the necessity of waiting until the action at law was determined before equity jurisdiction was invoked, and it saved the necessity of procuring the issuance of an injunction to restrain the execution of the judgment at law." These authorities make it very plain that the action at law and the suit set in motion by the complaint, in the nature of a cross bill in equity, must be treated as independent proceedings, as they are in reality, and that the remedies appropriate and

peculiar to each must be pursued in its peculiar forum. The question of practice suggested arises at the parting of the ways—should the action at law be suspended or held in abeyance, and the suit in equity allowed to proceed, or *vice versa?*

The court below decided the motion and demurrer adversely to defendants, whereupon they filed an answer, and we are called upon to determine how far they have waived the right to call in question the action of the court in that respect. As it may pertain to the motion *Scheland* v. *Erpelding*, 6 Or. 258, is to the very purpose. Erpelding commenced an action against Scheland for the recovery of wages as a brewer. Scheland filed an answer denying such indebtedness, and setting up as a further defense that Erpelding, during the time in which it was alleged the wages had accrued, was in equal co-partnership with himself in the brewery business, thus presenting a complete defense at law, notwithstanding Scheland, immediately on filing his answer in the action, filed a cross complaint against Erpelding in equity, setting up the co-partnership arrangement, that Erpelding had refused to continue in the business, and praying that the action at law be stayed, and for an adjustment of the co-partnership affairs. A motion to strike out the cross complaint was made and overruled. Erpelding thereupon answered the same, and also set up a co-partnership between the parties, but arising from a somewhat different arrangement, and, the issues being made up, a trial was had upon the equity side of the court, which resulted in a decree favorable to Erpelding, and Scheland appealed. It was there insisted that, as a complete defense at law had been pleaded, a court of equity was without jurisdiction to entertain the suit instituted by virtue of the cross complaint. The court, speaking through Mr. Justice Boise, answered the objection in this way : ''As

we have before said, we think this cross bill should have been stricken out on motion, but the court having refused that motion, the plaintiff had his option to insist on his motion, and assign the overruling of the same as error, or do as he did,—answer the same, and let this part of his case proceed in equity. This cross bill is a bill to dissolve and settle an alleged partnership, and would have been a proper proceeding as a suit in equity had the issue of partnership in the action at law been found for Scheland, and that part of the claim of Erpelding thereby defeated. That is to say, the matters alleged in the bill are such as belong to the jurisdiction of a court of equity; and the same being before the court by proper pleadings, and the parties having appeared and submitted to the jurisdiction, we think the court had authority to hear and determine the question as to whether there was a partnership as alleged, and, if such was found, to declare and settle it, if a sufficient case was made by the pleadings and the evidence." What is true in practice as it respects the motion is also true as it may pertain to the demurrer. By answering, the defendants have made the equitable forum a matter of their own selection, and have thereby waived the right to insist that the cause should be first tried out at law. As suggested in *Scheland* v. *Erpelding*, 6 Or. 258, they had a right to stand upon their motion or demurrer, or do as they did,—answer the cross complaint, and let that part of their case proceed in equity. The case of *Dolph* v. *Barney*, 5 Or. 191, 215, does not present the question here involved, and, whatever may be the force of counsel's criticism, it is not controlling here.

3. But it is claimed that the objection which the demurrer to the cross complaint suggests is one not susceptible of waiver in that manner, as it goes to the jurisdiction of the court to entertain the suit set in motion by the cross complaint. This is based upon the idea that the answer

in the action at law disclosed an adequate remedy in that forum. But it can make no difference whether the answer at law be considered in connection with the cross complaint, or the latter as a complete pleading within itself, as both disclose the same facts, which go to show that an adequate remedy at law exists, and, if equitable jurisdiction is ousted by the statements contained in the one pleading, it is just as effectually dislodged by those comprised by the other. The defendant Abbie K. Munger, by her action at law, claimed and asserted a fee simple title, together with the right of possession, alleging that the South Portland Land Company was in possession. Both parties herein claim title from a common source,— the defendants by inheritance from William Collins, and the plaintiff through *mesne* conveyances from the same person. The cross complaint shows, however, that one of the muniments of title forming a link in the plaintiff's chain is defective, and hence its resort to equity, with a view to obtaining either its reformation to accord with the alleged purposes and intention of the parties to the instrument, or a specific performance requiring the execution of the deed, so as to cure the defect, and thereby perfect its chain of title to the premises in dispute. In connection with the alleged facts touching the infirmities of the instrument, considered as a deed, it is also alleged that plaintiff has been in the adverse and exclusive possession for more than ten years, which, of itself, if true, would give it an unimpeachable title by virtue of the statute of limitations. The alleged possession was obtained and held, however, through the defective muniment. Thus we have a defense based primarily upon facts requiring the interposition of a court of equity. But, by reason of the lapse of time, the possessory right gained by virtue of the equitable conditions has ripened into a perfect title.

4. It is claimed that the statute permitting the interposition of a complaint in equity, in the nature of a cross bill, which is effective to stay the proceedings at law, confers but a special statutory jurisdiction. We do not so understand it. The practice thereby inaugurated is an innovation upon the common law, which prohibited the setting up of an equitable defense to an action at law. But the remedy afforded is as broad as that which may be invoked by original bill, permitting even the use of such facts as constitute a partial defense only to the cause of action. Such is the doctrine of *Hatcher* v. *Briggs*, 6 Or. 31, where it was held that a person entitled to relief arising out of facts requiring the interposition of a court of equity, where such facts are material to his defense of the action at law, must file his complaint, in which he must follow the general rules of pleading under the code, which require simply a plain and concise statement of the facts constituting the cause of suit, and may set forth any facts and circumstances forming defenses, either entire or partial, to the action at law. They must, however, be such facts and circumstances as show that he has no plain, adequate, and complete remedy at law. It was said : ''The general doctrine resulting from the best considered cases is that the defendant can defeat the action upon equitable principles, and not only defeat the action, but secure affirmative relief ; and that as the defendant becomes an actor, and the pleading an equity pleading, the sufficiency thereof in substance, though not in form, is to be determined by the application of the general rules of equity pleading ; and that, as an equitable defense may be set up to a legal claim, it would be inconsistent to lay down the doctrine that, because one party is asserting a right under a legal form, equity will not protect the equitable rights of the other party to the same extent as though the proceeding was under equitable forms.    *    *    *    Even

under the old equity practice, the equity subsisting between the parties did not depend upon the tribunal in which the relief was sought, and the equities of one party could not be defeated by the other party resorting to law, rather than to equity, for relief." So, it was held in *Hill* v. *Cooper*, 6 Or. 181, that a party may rely upon his legal defense in an action without being thereby precluded from asserting his equitable title in an original suit. By statutory intendment, therefore, the defendant in the law action is afforded such relief, either defensive or affirmative, entire or partial, as he would be able to insist upon in a court of equity, and, if the facts are such as to invoke equitable cognizance, the action at law may be stayed until the equities are disposed of in the appropriate forum.

The remedy at law to which the statute alludes must be plain, adequate, and complete, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. It is not enough that there is a remedy at law : *Boyce's Ex'rs* v. *Grundy*, 28 U. S. (3 Pet.) 210, 7 L. Ed. 655. Mr. Chief Justice FULLER (in *Gormley* v. *Clark*, 134 U. S. 338, 349, 10 Sup. Ct. 554, 557, 33 L. Ed. 909, 914), states the doctrine thus : "The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances." See, also, *Kilbourn* v. *Sunderland*, 130 U. S. 505, 514, 32 L. Ed. 1005 (9 Sup. Ct. 594); *Watson* v. *Sutherland*, 72 U. S. (5 Wall.) 74, 18 L. Ed. 580 ; *Witter* v. *Arnett*, 8 Ark. 57. So, in *Henderson* v. *Johns*, 13 Colo. 280 (22 Pac. 461), it is said : "The remedy at law which defeats a suit in equity must be full, adequate, and complete. Anything less than this will not be sufficient to deprive equity of jurisdiction." And again, in 11 Am. & Eng. Enc. Law (2 ed.), 200, the learned author says : "The construction

given to this phrase 'adequate remedy' by the courts requires that the remedy at law must be as practical and efficient as the remedy afforded by chancery, in order to exclude the latter from jurisdiction."

In the case at bar, the statute of limitations, if entirely run, would afford a complete remedy at law by giving the plaintiff in the equitable proceeding a valid legal title as against all the world. But the equitable defense interposed shows that the possession was obtained through the alleged defective instrument by which it was intended that the legal title should have been passed to plaintiff's predecessors at the same time that the possession was given. For the purpose of passing the legal title, it is admittedly insufficient. Before it can be made effective for such purpose, it must be reformed, else, if it constitutes merely a contract to convey, the plaintiff is without its supposed muniment until a specific performance supplies its place. Equity is alone competent to administer the remedy in either event. If plaintiff should prevail on its possessory title alone, it would still be without the perfect muniment to which it is entitled, so that the relief in equity can be said to be more adequate and complete than the action at law could afford, as it may take cognizance of all matters in any way bearing upon or influencing the conditions, and is not only competent to determine the present ownership, but it may correct or supply a muniment, and thereby render plaintiff's chain of title perfect from the original source.

Viewing the matter in another light, should the imperfect deed be construed as a contract to convey, before the statute of limitations could be put in motion, it would have to be shown that the purchase price had been paid, or the conditions upon which the plaintiff was entitled to the deed had been fully performed ; for, if the purchase price had not been paid, or the conditions performed,

until within the time prescribed in which the statute would have run, then the plaintiff could not establish its legal title, and would, of course, fail; hence the remedy invoked at law could not be as practical and efficient as that afforded by chancery.   So that, while the plaintiff has alleged that it has been in possession for a period of more than ten years, yet it is a defense which is interposed in connection with the purely equitable defense, by which it seeks a specific performance of the contract, or a reformation thereof, whereby its paper title would be perfected also.   It cannot be said, under these conditions, that the remedy at law is or would be as complete and adequate as that which may be available in equity. In *Sharon* v. *Tucker*, 144 U. S. 533, 36 L. Ed. 532 (12 Sup. Ct. 720), it was expressly held that "a person who has acquired title by adverse possession may maintain a bill in equity against those who, but for such acquisition, would have been the owners, for the purpose of having his title judicially ascertained and declared, and to enjoin the defendants from asserting title to the same premises from former ownership that has been lost."   If an original bill will lie in such a case, there exists no good reason why the plaintiff in a complaint in the nature of a cross bill in equity may not obtain affirmative relief of like character.   See, also, *Arrington* v. *Liscom*, 34 Cal. 365 (94 Am. Dec. 722); *Four Hundred and Twenty Min. Co.* v. *Bullion Min. Co.* 3 Sawy. 634 (Fed. Cas. No. 4,989).

5.   At the time of filing the original cross complaint, it was thought a mistake had been made in drafting the quitclaim deed, whereby section thirty-four was designated as "thirty-seven," the record thereof showing the infirmity, it being supposed that the deed had been lost; but, being subsequently discovered, it disclosed no defect in that respect, hence it was sought to file the amended

cross complaint. The purpose of filing the same was to make it conform to the facts as proven, and the court very properly permitted the amendment.

6. The amended cross complaint consists of two counts, the first of which seems to be based upon the idea of a mutual mistake of the parties to the supposed deed from William Collins to Mary T. Collins, comprising (1) a mistake in omitting from the description in the deed the county, state, and meridian; (2) a mistake in recording the deed, or a fraudulent alteration of such record; (3) an omission to have the deed properly certified, so as to entitle it to record; and (4) a mistake of the scrivener in failing to append the private seal of William Collins to the instrument. Therefore it is claimed that a reformation of the deed is the proper remedy whereby to perfect plaintiff's title, and thus to establish a prior and superior title to that preferred by the defendants. The second count seems rather to proceed upon the idea that, by mutual mistake of the parties in the particulars hereinbefore mentioned, plaintiff is possessed of a defective muniment of title, but that, notwithstanding, having gone into possession in pursuance of the supposed deed, and having maintained adverse possession for the period prescribed by the statute of limitations, it has acquired a perfect title, and that by the claim of ownership by inheritance from William Collins, coupled with the attempt to question such title on account of the defects pertaining to the deed under which it claims to hold, the defendants have thereby cast a cloud upon its title which it is entitled to have removed, and that equity is the proper forum in which to seek the relief. There are appropriate allegations in each count, showing that the deed was made, executed, and delivered by William Collins to Mary T. Collins, for the consideration of $2,000, and that said sum was paid by the grantee to the grantor; that, upon the delivery of said deed, Wil-

liam Collins delivered the possession of said premises to the said Mary T. Collins, who went into the immediate possession of the same, and the whole thereof. The prayer of the plaintiff is that the law action be perpetually enjoined; that plaintiff be decreed to be the owner in fee simple of the premises in dispute; that its title thereto be quieted as against the claim of the defendants; that the deed from William Collins to Mary T. Collins be reformed and corrected, so as to conform to the real intention of the parties thereto; and for such other and further relief as may seem meet and equitable.

It is claimed that the cross complaint states neither a cause of suit for the reformation of the defective muniment or for a removal of the cloud or to quiet title; that, if it states a cause for any purpose, it must be for specific performance, treating the deed as a contract to convey; and hence it is urged that the plaintiff has mistaken its remedy. The prayer for general relief will, however, warrant the court in decreeing specific performance, if such relief is otherwise appropriate under the facts stated: *Franklin* v. *Greene*, 2 Allen, 519; *Hill* v. *Beach*, 12 N. J. Eq. 31. Looking to the allegations of the cross complaint, it would seem the pleader supposed that the equities of plaintiff's case consisted in the reformation of the imperfect muniment or the removal of a cloud from its title; but at the trial here it was insisted that, if the complaint was not sufficient for either of these purposes, it stated facts upon which to base relief in the way of a specific performance of the contract to convey, treating the defective deed as such contract. In this latter view we concur, whatever may be said of the soundness of the pleader's first impressions. The complaint states all the facts necessary and requisite to show a sufficient and valid contract and undertaking by William Collins to convey the premises in dispute to Mary T. Collins, his

wife, and that the possession was taken, entered upon, and maintained by the successors in interest of the Collinses from that time down to the commencement of this proceeding. Some authorities hold that the omission of the private seal of the grantor to the deed, where it is manifest from the face of the instrument that it was the intention of the grantor to affix his seal, is a proper subject for reformation, because of the mistake of the party in failing to append it, and the instrument will be treated as an actual conveyance : *Sullivan* v. *Latimer*, 38 S. C. 417 (17 S. E. 221); *Trustees* v. *Bryson*, 34 S. C. 401 (13 S. E. 619); *Barnard* v. *Gantz*, 140 N. Y. 249, 258 (35 N. E. 430); *Town of Solon* v. *Williamsburgh Sav. Bank*, 114 N. Y. 122, 134 (21 N. E. 168); 1 Devlin, Deeds, § 246. But upon the right to specific performance the way is practically clear. Mr. Justice Boise, in *Hill* v. *Cooper*, 6 Or. 181, said : ''The facts stated in the plaintiff's bill show that Patton paid Stratton the full purchase price of the land, and took possession under the imperfect deed. This proceeding would give Patton an equitable title to the land as against Stratton, which a court of equity, on a proper bill filed, would enforce by declaring a specific performance of the contract to convey ; for the imperfect deed, in such a case, will be construed as a contract to convey, and may be enforced.'' Such relief has been granted elsewhere in the case of a defectively executed deed, made so by reason of the omission of the grantor to append his private seal : *Hanson* v. *Michelson*, 19 Wis. 498, 525 ; *Dreutzer* v. *Lawrence*, 58 Wis. 594 ( 17 N. W. 423); *Dreutzer* v. *Baker*, 60 Wis. 179 (18 N. W. 776).

The evidence adduced at the trial shows substantially the following facts : William Collins and Mary T. Collins, his wife, were the donees from the general government of the tract of land described in the cross complaint, known as the ''William and Mary T. Collins Donation

Land Claim,'' the west half of which inured to the husband, and the east half to the wife. On June 22, 1881, at Collins Landing, in Skamania County, Territory of Washington, William Collins signed and acknowledged a quitclaim deed to all his right, title, and interest in and to the donation land claim, purporting to convey the same to Mary T. Collins, his wife. The instrument was witnessed by Thomas Moffett and Laura Moffett, and was acknowledged by William Collins the day it bears date,. before Thomas Moffett, as notary public. There is also appended to the deed the certificate of N. H. Owings, Secretary of Washington Territory, showing that the said Thomas Moffett was, at the date of the certificate of acknowledgement, a duly-qualified notary public in and for said territory, and authorized by the laws thereof to take acknowledgement of deeds; that his signature thereto was genuine; and that said acknowledgement was in conformity to the laws of that territory. This certificate bears date October 4, 1881. The deed recites ''that I, William Collins, of Skamania County, Washington Territory, in consideration of two thousand dollars, to me paid by Mary T. Collins, of said county and territory, do hereby remise, release, and forever quitclaim,'' etc., and has affixed thereto, following the name ''William Collins,'' the printed letters ''L. S.,'' in printed brackets. It was recorded October 8, 1881, in Book 49, Record of Deeds for Multnomah County, at page 82. This record shows ''thirty-seven'' to have been written therein in the place and stead of ''thirty-four,'' as it appears in the original deed, indicative of the section in which part of the land is situated. Thomas Moffett, one of the witnesses to the deed, remembers having seen William Collins sign the same, and identified the instrument as the one then signed and acknowledged before him. Laura Moffett witnessed the deed, and recognized her signature, but has no pres-

ent recollection of having seen Collins sign. J. H. Huddleson first saw this quitclaim deed on September 1, 1887, the day prior to the execution and delivery to himself and A. L. Maxwell of a warranty deed to the same premises by Mary T. Collins. Mrs. Collins had the quitclaim deed in her possession, and at that time she delivered the same over to Huddleson. He and Maxwell were then talking about purchasing the land of Mrs. Collins, and did purchase it, and received the warranty deed above alluded to on the second day of September, 1887. Huddleson has had the quitclaim deed in his possession ever since its delivery, and up to the time of the commencement of the action at law. Mrs. Collins executed, acknowledged, and delivered to Huddleson and Maxwell two deeds, both bearing date September 2, 1887, to the premises. The one first delivered was witnessed by Mrs. Austin, the mother of the Austin heirs, who are defendants herein. By reason of some defect in the description, another deed was made, executed, and delivered by her to take its place, and the first one was returned. Mrs. Austin was also a witness to the second. Huddleson and Maxwell paid Mrs. Collins $8,000 for the land. At the time of the purchase there was a mortgage covering the whole thereof, executed by Mary T. Collins, September 19, 1885, to secure a note of $3,000, also signed by her alone, which note and mortgage were held by S. G. Reed. This they paid, to the amount of $3,306, and deducted the same from the agreed purchase consideration.

Huddleson went upon the property to live the following June, and resided there two and one-half years, and after the plaintiff became the owner thereof occupied it four months more, paying plaintiff rent therefor at the rate of $10 per month. On April 7, 1888, Maxwell and wife, for the consideration of $6,750, sold and conveyed by warranty deed to Huddleson their entire interest in

the premises, and Huddleson and wife conveyed to the plaintiff, May 5, 1890, also by warranty deed. The plaintiff occupied the premises through tenants subsequent to its purchase, and is presently in possession of the whole. William Collins lived at Collins Landing, Washington, with his wife, about twenty years, and died at his home, above but near the landing, August 28, 1881. He had not been well for four or five years, and for two or three years prior to his death the family had to be careful and watchful of him. He was able to be about, however, never having been confined to his bed. His affliction was heart trouble, and he died suddenly. During his illness, Mrs. Collins transacted much of his business, but during the whole time his mental faculties were unimpaired. As described by Mrs. Munger, his daughter, "his mind was far better than hers [meaning Mrs. Collins]. Up to the time of his death, he was of a clear, bright mind." After his death, Mrs. Collins took charge of his effects, including papers, accounts, and everything he had, and was the administratrix of the estate in Washington Territory. Mrs. Collins dealt with the whole of said donation land claim as if it was her own. She placed it in the hands of agents for sale, and at one time gave J. G. Warner a bond entitling him to purchase, and it was after the expiration of such bond that Huddleson and Maxwell bought of her. The whole claim was assessed on the tax rolls for 1880 to William Collins; for the years 1881, 1882, 1883, 1884, 1885, 1886, and 1887, to Mary T. Collins, who died at East Portland, May 1, 1888; for the years 1888 and 1889, to J. H. Huddleson; and for 1890, 1891, 1892, 1893, and 1894 to the plaintiff. There is some evidence tending strongly to show that a change had been made in the deed after it was recorded; that "thirty-four" had been erased, and "thirty-seven" written in its

36 OR.—31.

stead. There is also some conflict in the evidence touching the signature to the quitclaim deed to Mrs. Collins ; but the very great preponderance in the weight thereof tends to show that William Collins not only signed it, but that he filled in the necessary blanks with his own hand, an ordinary blank form having been used for the purpose. Collins wrote a good hand. He was for some time probate judge of Skamania County, prepared a great many deeds for others, and usually prepared his own papers and conveyances. There is no evidence of the actual payment of the $2,000 consideration mentioned in the quitclaim deed, nor any part of it, by Mary T. Collins to her husband, or of what such payment consisted, whether of money or of property, except the recitation in the deed, nor is there any testimony of a delivery of the deed by Collins to his wife, except the fact of its having been recorded, and that she had it in her possession, and dealt with it, and the property which it purports to convey, as her own. There is some testimony in the record tending to show that Collins had stated that he intended the west half of said donation land claim should eventually go to the children ; that about six weeks before his death he remarked to one of defendants that all the property he had left was his interest in the donation land claim at Oswego, and "that will go to my children."

7. It is contended that, treating the quitclaim deed as a contract to convey, there is absolutely no evidence that Mrs. Collins paid any consideration whatever for the premises, and that equity will not decree the specific performance of a mere voluntary undertaking to convey. It has been held, however, that, "in the absence of any proofs to the contrary, the consideration expressed in such imperfect deed will be presumed to be the true consideration for the conveyance :" *Dreutzer* v. *Lawrence*, 58 Wis. 594 (17 N. W. 423). And again, in *Todd* v. *Eighmie*,

38 N. Y. Supp. 304, it was said : "But the recital of a consideration in it [the deed] was *prima facie* proof of the payment by the grantee therein named to the heirs \* \* \* of a valuable consideration for the premises." There was a necessity, of course, for the plaintiff to make out a *prima facie* case in this respect, and to exhibit *prima facie* sufficient to establish the fact of the payment of the consideration for the deed in order to uphold it as a contract to convey. But we think, under the authorities, that the offering and receipt in evidence of the deed, which shows upon its face that the consideration had been paid by Mary T. Collins to William Collins, was sufficient to support the contract in the first instance, and that, as this *prima facie* case has not been overcome by the testimony for defendants, we must conclude that the contract is upheld by a sufficient consideration.

8. There is another question touching the delivery of the quitclaim deed to Mary T. Collins. It is insisted that there is no sufficient evidence to establish such delivery. It has been shown that the deed was placed on record in Multnomah County, but by whom it is not established. The original deed was subsequently found to be in her possession, which she dealt with as if it was hers individually. Not only this, but she dealt with the property itself as if it belonged to her, and as though she was the sole owner of the legal title, having endeavored to place it upon the market, and to sell the same, which finally culminated in a deed, whereby she covenanted that she was the owner thereof in fee simple. She delivered this quitclaim deed, at the time she made her conveyance to Huddleson and Maxwell, to one of the grantees. Here, we think, is sufficient evidence upon which to base the fact of the delivery of such deed by Collins to his wife. Very little weight can be given to the testimony touching the statements of William Collins respecting the property

in dispute. In support of this view, see *Serles* v. *Serles*, 35 Or. 289 (57 Pac. 634); *White* v. *White*, 34 Or. 141 (55 Pac. 645), and *Payne* v. *Hallgarth*, 33 Or. 430 (54 Pac. 162), where numerous authorities are collated and discussed. The decree of the court below will be affirmed.

Affirmed.